## LIGHT *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLORADO.

No. 360.   Argued February 27, 28, 1911.—Decided May 1, 1911.

*United States* v. *Grimaud, ante,* p. 506, followed to effect that Congress may authorize an executive officer to make rules and regulations as to the use, occupancy and preservation of forests and that such authority so granted is not unconstitutional as a delegation of legislative power.

At common law the owner was responsible for damage done by his live stock on land of third parties, but the United States has tacitly suffered its public domain to be used for cattle so long as such tacit consent was not cancelled, but no vested rights have been conferred on any person, nor has the United States been deprived of the power of recalling such implied license.

While the full scope of § 3, Art. IV, of the Constitution has never been definitely settled it is primarily a grant of power to the United States of control over its property, *Kansas* v. *Colorado,* 206 U. S. 89; this control is exercised by Congress to the same extent that an individual can control his property.

It is for Congress and not for the courts to determine how the public lands shall be administered.

Congress has power to set apart portions of the public domain and establish them as forest reserves and to prohibit the grazing of cattle thereon or to permit it subject to rules and regulations.

Fence laws may condone trespasses by straying cattle where the laws have not been complied with, but they do not authorize wanton or willful trespass, nor do they afford immunity to those willfully turning cattle loose under circumstances showing that they were intended to graze upon the lands of another.

Where cattle are turned loose under circumstances showing that the owner expects and intends that they shall go upon a reserve to graze thereon, for which he has no permit and he declines to apply for one, and threatens to resist efforts to have the cattle removed and contends that he has a right to have his cattle go on the reservation, equity has jurisdiction, and such owner can be enjoined at the instance of the Government, whether the land has been fenced or not.

*Quære*, and not decided, whether the United States is required to fence property under laws of the State in which the property is located.

This court will, so far as it can, decide cases before it without reference to questions arising under the Federal Constitution. *Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175.

THE Holy Cross Forest Reserve was established under the provisions of the act of March 3, 1891. By that and subsequent statutes the Secretary of Agriculture was authorized to make provisions for the protection against destruction by fire and depredations of the public forest and forest reservations and "to make such rules and regulations and establish such service as would insure the objects of such reservation, namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction." 26 Stat. 1103, c. 563; 30 Stat. 35, c. 2; act of Congress February 1, 1905; 7 Fed. Stat. Ann. 310, 312, and Supp. for 1909, p. 663. In pursuance of these statutes regulations were adopted establishing grazing districts on which only a limited number of cattle were allowed. The regulations provided that a few head of cattle of prospectors, campers and not more than ten

belonging to a settler residing near the forest might be admitted without permit, but saving these exceptions the general rule was that "all persons must secure permits before grazing any stock in a national forest."

On April 7, 1908, the United States, through the district attorney, filed a bill in the Circuit Court for the District of Colorado reciting the matters above outlined, and alleging that the defendant Fred Light owned a herd of about 500 cattle and a ranch of 540 acres, located two and a half miles to the east and five miles to the north of the reservation. This herd was turned out to range during the spring and summer, and the ranch then used as a place on which to raise hay for their sustenance.

That between the ranch and the reservation, was other public and unoccupied land of the United States; but, owing to the fact that only a limited number of cattle were allowed on the reservation, the grazing there was better than on this public land. For this reason, and because of the superior water facilities and the tendency of the cattle to follow the trails and stream leading from the ranch to the reservation, they naturally went direct to the reservation. The bill charged that the defendant when turning them loose knew and expected that they would go upon the reservation, and took no action to prevent them from trespassing. That by thus knowingly and wrongfully permitting them to enter on the reservation he intentionally caused his cattle to make a trespass, in breach of the United States property and administrative rights, and has openly and privately stated his purpose to disregard the regulations, and without permit to allow and, in the manner stated, to cause his cattle to enter, feed and graze thereon.

The bill prayed for an injunction. The defendant's general demurrer was overruled.

His answer denied that the topography of the country around his ranch or the water and grazing conditions were

such as to cause his cattle to go on the reservation; he denied that many of them did go thereon, though admitting that some had grazed on the reservation. He admitted that he had liberated his cattle without having secured or intending to apply for a permit, but denied that he willfully or intentionally caused them to go on the reservation, submitting that he was not required to obtain any such permit. He admits that it is his intention hereafter, as heretofore, to turn his cattle out on the unreserved public land of the United States adjoining his ranch to the northeast thereof, without securing or applying for any permit for the cattle to graze upon the so-called Holy Cross Reserve; denies that any damage will be done if they do go upon the reserve; and contends that, if because of their straying proclivities, they shall go on the reserve, the complainant is without remedy against the defendant at law or in equity so long as complainant fails to fence the reserve as required by the laws of Colorado. He claims the benefit of the Colorado statute requiring the owner of land to erect and maintain a fence of given height and strength, in default of which the owner is not entitled to recover for damage occasioned by cattle or other animals going thereon.

Evidence was taken, and after hearing, the Circuit Court found for the Government and entered a decree enjoining the defendant from in any manner causing, or permitting, his stock to go, stray upon or remain within the said forest or any portion thereof.

The defendant appealed and assigned that the decree against him was erroneous; that the public lands are held in trust for the people of the several States, and the proclamation creating the reserve without the consent of the State of Colorado is contrary to and in violation of said trust; that the decree is void because it in effect holds that the United States is exempt from the municipal laws of the State of Colorado relating to fences; that the statute

conferring upon the said Secretary of Agriculture the power
to make rules and regulations was an unconstitutional
delegation of authority to him and the rules and regula-
tions therefore void; and that the rules mentioned in the
bill are unreasonable, do not tend to insure the object of
forest reservation and constitute an unconstitutional in-
terference by the Government of the United States with
fence and other statutes of the State of Colorado, enacted
through the exercise of the police power of the State.

*Mr. James H. Teller,* with whom *Mr. John T. Barnett,*
Attorney General of Colorado, *Mr. Henry M. Teller, Mr.
C. S. Thomas, Mr. E. C. Stimson, Mr. Milton Smith, Mr.
H. A. Hicks* and *Mr. Ralph McCrillis* were on the brief,
for appellant:

The jurisdiction of a State extends over all the terri-
tory within its boundaries. *New York* v. *Miln,* 11 Pet.
139; *Pennoyer* v. *Neff,* 95 U. S. 714; *Van Brocklin* v.
*Anderson,* 117 U. S. 158; *Kansas* v. *Colorado,* 206 U. S.
93.

One who asserts the existence of any exemption from
this jurisdiction must point out the act of cession, or the
constitutional provision from which it arises. The Gov-
ernment holds title to public lands, not as a sovereign, but
as a proprietor merely. This, of course, applies only to
public lands properly so called, and not to lands used
for governmental purposes. *Pollard's Lessee* v. *Hagan,* 3
How. 212; *Woodruff* v. *N. Bloomfield G. M. Co.,* 18 Fed.
Rep. 772; *People* v. *Scherer,* 30 California, 658; *Camp* v.
*Smith,* 2 Minnesota, 131; *Hendricks* v. *Johnson,* 6 Porter
(Ala.), 472; *United States* v. *Bridge Co.,* 6 McLean, 517;
*United States* v. *Chicago,* 7 How. 185; *United States* v.
*Cornell,* 2 Mason, 60.

Sovereignty is not to be taken away by implication.
*People* v. *Godfrey,* 17 Johns. 225. Section 8 of Article I
of the Constitution, which gives the United States ex-

clusive jurisdiction over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings, means that these are to be purchased with the consent of the legislature. Story on Const., 5th ed., § 1227; *Ft. Leavenworth Ry. Co.* v. *Lowe,* 114 U. S. 525; *Mobile* v. *Eslava,* 16 Pet. 277; *People* v. *Godfrey,* 17 Johns. 225.

A forest reserve, however beneficial, is not in fact an instrument of government and necessary to the exercise of national sovereignty.

Even in those cases in which there is a cession of jurisdiction by the State subsequent to the adoption of a fence law, the law prevails on such lands until repealed by the General Government.    *C., R. I. & P. Ry. Co.* v. *McGlinn,* 114 U. S. 542.

If the fence law would thus apply on territory of which the jurisdiction had been ceded by a State, it certainly is not ousted by the mere act of reserving public lands for forestry purposes.

The ownership by the General Government of land within a State does not carry with it general rights of sovereignty over such lands.

If the Federal Government has jurisdiction over these reservations to the extent necessary to support this decree, the State is deprived of its police power over a large portion of its territory.   The police power of a State extends over all of its territory and is exclusive.    *Prigg* v. *Commonwealth,* 16 Pet. 639; *The Slaughter House Cases,* 16 Wall. 63; *In re Rahrer,* 140 U. S. 554; *United States* v. *Knight,* 156 U. S. 11; *L'Hote* v. *New Orleans,* 177 U. S. 597.

The court bases the right to prevent the fencing of public lands upon the fact that such fencing would retard the settlement of the lands, which is the purpose for which the Government holds them as a trustee.

The result of this decree, as before stated, is, that

state laws passed in the exercise of the police power are not operative on the public domain. See *Shannon* v, *United States*, 88 C. C. A. 52. That case, however, is not authority to the effect claimed.

Fences and the trespasses of live stock is a proper subject of legislation under the police power of the State. *Bacon* v. *Walker*, 204 U. S. 317; *Rideout* v. *Knox*, 148 Massachusetts, 368. This decree is contrary not only to the statutes of the State concerning fencing and live stock, but to the law as laid down by the state Supreme Court prior to the adoption of these laws. *Morris* v. *Fraker*, 5 Colorado, 425; *Richards* v. *Sanderson*, 39 Colorado, 278; *Buford* v. *Houtz*, 133 U. S. 320.

In 1885 a fence law was enacted, but it did no more than express in statutory form what was already the law of the State. See Session Laws, 1885, p. 220, §§ 2987 *et seq.*, Rev. Stat. Colo., 1908. The gist of the statute is that damages from trespass by animals are not recoverable unless the premises on which such trespass occurs are enclosed by a lawful fence as therein prescribed.

To limit the jurisdiction of States containing forest reserves is to deny to them that equality with other States to which they are entitled. *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Ward* v. *Race Horse*, 163 U. S. 504. This court will take judicial notice of the proclamations of the President which have set aside as forest reserves within the State of Colorado an area of 21,309 square miles, more than one-fifth of the area of the State; but see *Kansas* v. *Colorado*, to effect that the National Government cannot enter the territory of one of the newer States and legislate in respect to improving by irrigation or otherwise lands within their borders, unless it has the same power in the older States.

An act of Congress cannot restrict the sovereignty of a State except under express constitutional authority therefor. *Withers* v. *Buckley*, 20 How. 84. The equality

of the States under the Federal Constitution is funda-
mental—a part of the very structure of our system of
government. It is guaranteed by statute and exists with-
out statute. *Ward* v. *Race Horse, supra.*

The authority of Congress to dispose of and protect
public lands is so limited as not to deprive one State of
an attribute of sovereignty which is conceded to other
States.

The lands described in the President's proclamation
as constituting the Holy Cross Forest Reserve have not
been legally set apart as permanent disposition thereof
for the purposes in said proclamation mentioned.

The Government holds public land in trust for the
people, to be disposed of so as to promote the settlement
and ultimate prosperity of the States in which they are
situated. This contradicts the withdrawal of lands for
such purposes. *Newhall* v. *Sanger,* 92 U. S. 761; *Bardon*
v. *N. P. R. R. Co.,* 145 U. S. 535; *Dobbins* v. *Commission-
ers,* 17 Pet. 435; *Weber* v. *Commonwealth,* 18 Wall. 57;
*United States* v. *Beebee,* 127 U. S. 348; *Shively* v. *Bowlby,*
132 U. S. 49; *United States* v. *Trinidad Coal Co.,* 137 U. S.
160; *Pollard's Lessee* v. *Hogan, supra.*

While national authority to reclaim arid lands may
be sustained, on the broad ground that their reclamation
is an aid in disposing of them, reservations, on the con-
trary, are in effect an abandonment of the purpose of
disposing of the lands included therein. Although the
power to establish these reserves may be highly desirable,
and may be more effectually exercised by the Federal
Government than by the States, that affords no ground
for asserting the existence of the power.

The system of national forest reserves violates the trust
concerning public land, and denies to the States in which
such reserves are established the equality with other States
to which they are entitled. Report of House Judiciary
Committee, 60th Congress, 1541, denying the right of the

Government to purchase land for forest reserves; and see 30 Stat. 34.

This subject is not within the scope of the general welfare clause of the Constitution. Story on the Const., §§ 907, 908; Tucker's Const. of United States, § 222. If the power does exist it cannot be exercised without the consent of the States directly affected.

*Mr. Ernest Knaebel* for the United States:

Appellant has no standing to attack the reservation or the forest-reserve policy. He does not claim any right or interest in any of the lands reserved.

Before the reservation he doubtless enjoyed a license of pasturage there. This was a mere privilege, existing, which the Government could take away. *Shannon* v. *United States*, 160 Fed. Rep. 870, 873; *Frisbie* v. *Whitney*, 9 Wall. 187; *Yosemite Valley Case*, 15 Wall. 77. The constitutionality of the reservation is attacked solely upon the ground of its supposed invasion of the rights and prerogatives of the State. But the State is not here objecting, and its supposed injury is no concern of the appellant. *Bacon* v. *Walker*, 204 U. S. 311, 315; *Hatch* v. *Reardon*, 204 U. S. 152, 160; *Budzisz* v. *Illinois Steel Co.*, 170 U. S. 41; *Supervisors* v. *Stanley*, 105 U. S. 305, 311; *Clark* v. *Kansas City*, 176 U. S. 114, 118; *Lampasas* v. *Bell*, 180 U. S. 276, 283, 284; *Cronin* v. *Adams*, 192 U. S. 108, 114.

The state fence law was not intended to apply to the United States. It confers no right whatever upon the cattle owner. It gives him no permission to place his cattle upon the land of another, whether fenced or unfenced. It merely vouchsafes him a reasonable assurance of immunity from what, under the common law, would be legal consequences of their trespassing, provided this

shall have resulted from their straying and not directly from any act and purpose of his own. *Buford* v. *Houtz,* 133 U. S. 320; *Lazarus* v. *Phelps,* 152 U. S. 81; *Sabine &c. Ry. Co.* v. *Johnson,* 65 Texas, 389, 393; *Delaney* v. *Errickson,* 11 Nebraska, 533, 534; *Otis* v. *Morgan,* 61 Iowa, 712; *Moore* v. *Cannon,* 24 Montana, 316, 324; *St. Louis Cattle Co.* v. *Vaught,* 1 Tex. Civ. App. 388; *Larkin* v. *Taylor,* 5 Kansas, 433, 446; *Union Pacific Ry. Co.* v. *Rollins,* 5 Kansas, 167, 176.

It has been held by the highest court in Colorado that the willful and deliberate driving of cattle upon the premises of another is actionable. *Nuckolls* v. *Gaut,* 12 Colorado, 361; *Norton* v. *Young,* 6 Colo. App. 187; *Fugate* v. *Smith,* 4 Colorado, 201; *Sweetman* v. *Cooper,* 20 Colorado, 5; *Richards* v. *Sanderson,* 39 Colorado, 278.

Even if the United States as a property owner is subject to the same control by the State as individuals are, to the mind of the state legislature the character and functions of the Nation are not lost in the general conception of ownership.

The regulations were a valid exercise of constitutional power. It was the duty of the individual to obey them and of the courts to enforce them without regard to state laws. The State has no beneficial right whatsoever in the land; there is neither community of ownership, nor relation of trustee and *cestui que trust.* While these lands are held by the United States in trust, the people of the United States—not particular States nor the people of particular States—are the beneficiaries. *United States* v. *Trinidad Coal Co.,* 137 U. S. 160; *United States* v. *Gratiot,* 1 McLean, 454; *S. C.,* 26 Fed. Cas. 15,249; *Turner* v. *American Baptist Union,* 5 McLean, 344; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 159; Treat's National Land System (N. Y., Treat & Co., 1910). Like all other States carved out of the public domain, with very few exceptions, 117 U. S. 160, Colorado solemnly agreed never to tax or

lay claim to any of the lands of the United States., See 18 Stat. 474, § 5; 1 Mills' Ann. Stat. Colo., 111; 19 Stat. 665.

The ordinance, however, was not necessary to protect the United States from all claim of state interest in the lands. *Hartman* v. *Tresise,* 36 Colorado, 146. The Constitution by Art. IV, § 3, cl. 2, provides that Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property of the United States, and the power being given without limitation, is absolute and exclusive of all state interference. *Wilcox* v. *Jackson,* 13 Pet. 498, 517; *United States* v. *Gratiot,* 14 Pet. 526; *Jourdan* v. *Barrett,* 4 How. 168, 184; *Irvine* v. *Marshall,* 20 How. 558; *Gibson* v. *Chouteau,* 13 Wall. 92, 99; *McCarthy* v. *Mann,* 19 Wall. 20; *United States* v. *Insley,* 130 U. S. 263; *Redfield* v. *Parks,* 132 U. S. 239; *Camfield* v. *United States,* 167 U. S. 518, 525; *Shively* v. *Bowlby,* 152 U. S. 1, 50, 52; *Mann* v. *Tacoma Land Co.,* 153 U. S. 273, 283; *United States* v. *Rio Grande Dam Co.,* 174 U. S. 690, 703; *Gutierres* v. *Land & Irrigation Co.,* 188 U. S. 545, 555; *Kansas* v. *Colorado,* 206 U. S. 46, 89; *United States* v. *Cleveland & Colorado Cattle Co.,* 33 Fed. Rep. 323; and see also *Shannon* v. *United States,* 160 Fed. Rep. 870.

See also decisions of other courts to the same effect. *United States* v. *Gratiot,* 1 McLean, 454; *S. C.,* 26 Fed. Cas. 15,249; *Turner* v. *Am. Baptist Union* (1852), 5 McLean, 344; *S. C.,* 24 Fed. Cas. 14,251; *Seymour* v. *Sanders,* 3 Dillon, 437; *S. C.,* 21 Fed. Cas. 12,690; *Union Mill & M. Co.* v. *Ferris,* 2 Sawyer, 176; *United States* v. *Cleveland Cattle Co.,* 33 Fed. Rep. 323, 330; *Carroll* v. *Price,* 81 Fed. Rep. 137; *Heckman* v. *Sutter,* 119 Fed. Rep. 83; *S. C.,* 128 Fed. Rep. 393; *Shannon* v. *United States,* 160 Fed. Rep. 870; *People* v. *Folsom,* 5 California, 373, 378; *Doran* v. *Central Pacific,* 24 California, 246, 257; *Miller* v. *Little,* 47 California, 348; *Vansickle* v. *Haines,* 7 Nevada, 249, 262;

*Fee* v. *Brown,* 17 Colorado, 510, 519; *S. C.,* 162 U. S. 602; *Waters* v. *Bush,* 42 Iowa, 255; *David* v. *Rackabaugh,* 32 Iowa, 540; *Sorrels* v. *Self,* 43 Arkansas, 451, 452.

The real object of the clause was to make plain beyond a doubt that in respect of all the Federal property Congress is omnipotent. *Fee* v. *Brown,* 17 Colorado, 510, 519; *Wilcox* v. *Jackson, supra.*

As to the meaning of the words "dispose of" and what is within the power of Congress as to disposition other than sale, see *United States* v. *Gratiot,* 14 Pet. 526; 20 Stat. 88; 26 Stat. 1093; *Northern Pacific* v. *Lewis,* 162 U. S. 366; *United States* v. *United Verde Copper Co.,* 196 U. S. 207; *Kohl* v. *United States,* 91 U. S. 367; *Shively* v. *Bowlby,* 152 U. S. 1, 26; *Withers* v. *Buckley,* 20 How. 84; *United States* v. *Bridge Company,* 6 McLean, 517; *United States* v. *Chicago,* 7 How. 185.

The Nation cannot be subjected in its rights or remedies to the control of state laws.

The conservation and uses contemplated by the forest policy are natural, reasonable, and beneficent to the people of the entire country. Lands so held and administered are among the inviolable instrumentalities of the Government. *Van Brocklin* v. *Tennessee,* 117 U. S. 177.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The defendant was enjoined from pasturing his cattle on the Holy Cross Forest Reserve, because he had refused to comply with the regulations adopted by the Secretary of Agriculture, under the authority conferred by the act of June 4, 1897, (30 Stat. 35), to make rules and regulations as to the use, occupancy and preservation of forests. The validity of the rule is attacked on the ground that Congress could not delegate to the Secretary legislative power. We need not discuss that question in view of the opinion in *United States* v. *Grimaud,* just decided, *ante,* p. 506.

The bill alleged, and there was evidence to support the finding, that the defendant, with the expectation and intention that they would do so, turned his cattle out at a time and place which made it certain that they would leave the open public lands and go at once to the Reserve, where there was good water and fine pasturage.   When notified to remove the cattle, he declined to do so and threatened to resist if they should be driven off by a forest officer.   He justified this position on the ground that the statute of Colorado provided that a landowner could not recover damages for trespass by animals unless the property was enclosed with a fence of designated size and material. Regardless of any conflict in the testimony, the defendant claims that unless the Government put a fence around the Reserve it had no remedy, either at law or in equity, nor could he be required to prevent his cattle straying upon the Reserve from the open public land on which he had a right to turn them loose.

At common law the owner was required to confine his live stock, or else was held liable for any damage done by them upon the land of third persons.   That law was not adapted to the situation of those States where there were great plains and vast tracts of unenclosed land, suitable for pasture.   And so, without passing a statute, or taking any affirmative action on the subject, the United States suffered its public domain to be used for such purposes.   There thus grew up a sort of implied license that these lands, thus left open, might be used so long as the Government did not cancel its tacit consent.   *Buford* v. *Houtz*, 133 U. S. 326.   Its failure to object, however, did not confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes.   *Steele* v. *United States*, 113 U. S. 130; *Wilcox* v. *Jackson*, 13 Pet. 513.

It is contended, however, that Congress cannot constitu-

tionally withdraw large bodies of land from settlement without the consent of the State where it is located; and it is then argued that the act of 1891 providing for the establishment of reservations was void, so that what is nominally a Reserve is, in law, to be treated as open and unenclosed land, as to which there still exists the implied license that it may be used for grazing purposes. But "the Nation is an owner, and has made Congress the principal agent to dispose of its property." . . . "Congress is the body to which is given the power to determine the conditions upon which the public lands shall be disposed of." *Butte City Water Co.* v. *Baker*, 196 U. S. 126. "The Government has with respect to its own land the rights of an ordinary proprietor to maintain its possession and prosecute trespassers. It may deal with such lands precisely as an ordinary individual may deal with his farming property. It may sell or withhold them from sale." *Camfield* v. *United States*, 167 U. S. 524. And if it may withhold from sale and settlement it may also as an owner object to its property being used for grazing purposes, for "the Government is charged with the duty and clothed with the power to protect the public domain from trespass and unlawful appropriation." *United States* v. *Beebee*, 127 U. S. 342.

The United States can prohibit absolutely or fix the terms on which its property may be used. As it can withhold or reserve the land it can do so indefinitely, *Stearns* v. *Minnesota*, 179 U. S. 243. It is true that the "United States do not and cannot hold property as a monarch may for private or personal purposes." *Van Brocklin* v. *Tennessee*, 117 U. S. 158. But that does not lead to the conclusion that it is without the rights incident to ownership, for the Constitution declares, §3, Art. IV, that "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or the property belonging to the United States." "The full scope of this

paragraph has never been definitely settled. Primarily, at least, it is a grant of power to the United States of control over its property." *Kansas* v. *Colorado,* 206 U. S. 89.

"All the public lands of the nation are held in trust for the people of the whole country." *United States* v. *Trinidad Coal Co.,* 137 U. S. 160. And it is not for the courts to say how that trust shall be administered. That is for Congress to determine. The courts cannot compel it to set aside the lands for settlement; or to suffer them to be used for agricultural or grazing purposes; nor interfere when, in the exercise of its discretion, Congress establishes a forest reserve for what it decides to be national and public purposes. In the same way and in the exercise of the same trust it may disestablish a reserve, and devote the property to some other national and public purpose. These are rights incident to proprietorship, to say nothing of the power of the United States as a sovereign over the property belonging to it. Even a private owner would be entitled to protection against willful trespasses, and statutes providing that damage done by animals cannot be recovered, unless the land had been enclosed with a fence of the size and material required, do not give permission to the owner of cattle to use his neighbor's land as a pasture. They are intended to condone trespasses by straying cattle; they have no application to cases where they are driven upon unfenced land in order that they may feed there. *Lazarus* v. *Phelps,* 152 U. S. 81; *Monroe* v. *Cannon,* 24 Montana, 316; *St. Louis Cattle Co.* v. *Vaught,* 1 Tex. App. 388; *The Union Pacific* v. *Rollins,* 5 Kansas, 165, 176.

Fence laws do not authorize wanton and willful trespass, nor do they afford immunity to those who, in disregard of property rights, turn loose their cattle under circumstances showing that they were intended to graze upon the lands of another.

This the defendant did, under circumstances equivalent to driving his cattle upon the forest reserve. He could

have obtained a permit for reasonable pasturage. He not only declined to apply for such license, but there is evidence that he threatened to resist efforts to have his cattle removed from the Reserve, and in his answer he declares that he will continue to turn out his cattle, and contends that if they go upon the Reserve the Government has no remedy at law or in equity. This claim answers itself.

It appears that the defendant turned out his cattle under circumstances which showed that he expected and intended that they would go upon the Reserve to graze thereon. Under the facts the court properly granted an injunction. The judgment was right on the merits, wholly regardless of the question as to whether the Government had enclosed its property.

This makes it unnecessary to consider how far the United States is required to fence its property, or the other constitutional questions involved. For, as said in *Siler* v. *Louisville & Nashville R. R.*, 213 U. S. 175 "where cases in this court can be decided without reference to questions arising under the Federal Constitution that course is usually pursued, and is not departed from without important reasons." The decree is therefore

*Affirmed.*