**UNITED STATES v. THOMPSON.**

No. 154.

District Court, E. D. Washington, N. D.

Sept. 30, 1941.

Lyle Keith, U. S. Atty., and Harvey Erickson, Asst. U. S. Atty., both of Spokane, Wash., for plaintiff.

Herman Howe, of Leavenworth, Wash., for defendant.

SCHWELLENBACH, District Judge.

This is an action brought by the Government to enjoin the defendant and his agents and employees from grazing his horses and cattle upon the lands of the Wenatchee National Forest and, particularly, on the Tumwater Forest camp ground therein. The evidence discloses that the defendant is owner of a small number of cattle which have been and are straying on the United States national forest lands and grazing thereon. There is no evidence of deliberate or intentional driving his stock onto the Government's land. Defendant just simply permits his stock to be loose and they graze upon his land, upon the lands of private owners and upon Government land. The defendant admits the facts and alleges that the defendant is protected by the provisions of the Washington State Statute which provides for the creation by the Boards of County Commissioners of counties within the State of restricted stock areas within which livestock are not permitted to run at large. Remington Revised Statutes of Washington, Sections

14

3068 to 3070—3 inclusive. The evidence discloses that a portion of the land owned by the Government included in the forest area was acquired by deed from the Great Northern Lumber Company dated December 10, 1926. The remainder of the forest area land is unappropriated public land which has never been segregated from the public domain. As to the purchased land, defendant contends that the State of Washington has never ceded nor has the United States accepted jurisdiction. As to the unappropriated public lands, the Enabling Act, Section 4, and paragraph second of the Washington State Constitution, article 26, provides that the people inhabiting the State "do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries of this state, * * * and that until the title thereto shall have been extinguished by the United States, same shall be and remain subject to the disposition of the United States."

It is the contention of the defendant that the State law under which, by inference at least, unrestricted grazing of cattle is permissible in those Counties where the restricted areas contemplated in the State Statutes have not been created gives to the defendant the right to graze his cattle upon any unfenced land. He contends that, because the United States has not acquired exclusive jurisdiction over its lands, the Secretary of Agriculture was not entitled to promulgate regulations governing the use of such lands for grazing purposes.

The defendant points out that there are many instances where, for the Federal Government to refuse to recognize the right of the State to protect its citizens by the exercise of its police power, would seriously endanger the health and safety of the citizens of the State.

■ If this case turned upon the question of exclusive jurisdiction, I would be compelled to accept the logic of the defendant's position. We of the West are more fully cognizant of the necessity of preventing encroachments upon the jurisdiction of our States than are others who live in states where the public domain does not constitute such a large percentage of the total area. As was said by Chief Justice Hughes in James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 215, 82 L.Ed. 155, 114 A.L.R. 318:

"As the Solicitor General has pointed out, a transfer of legislative jurisdiction carries with it not only benefits, but obligations, and it may be highly desirable, in the interest both of the national government and of the state, that the latter should not be entirely ousted of its jurisdiction. The possible importance of reserving to the state jurisdiction for local purposes which involve no interference with the performance of governmental functions is becoming more and more clear as the activities of the government expand and large areas within the states are acquired."

Again, in Mason Co. v. Tax Commission of Washington, 302 U.S. 186, 58 S.Ct. 233, 244, 82 L.Ed. 187, Chief Justice Hughes said this: "The mere fact that the Government needs title to property within the boundaries of a State, which may be acquired irrespective of the consent of the State (Kohl v. United States, 91 U.S. 367, 371, 372, 23 L.Ed. 449), does not necessitate the assumption by the Government of the burdens incident to an exclusive jurisdiction. We have frequently said that our system of government is a practical adjustment by which the national authority may be maintained in its full scope without unnecessary loss of local efficiency. In acquiring property, the federal function in view may be performed without disturbing the local administration in matters which may still appropriately pertain to state authority."

■ The Congress, itself, recognized this fact last year with the adoption of the Act of October 9, 1940, Public No. 825, 76th Congress, 3d Session; U.S.C.A. Title 40, § 255, which reads as follows:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws

of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

However, this is not a question of exclusive legislative jurisdiction. The Constitution, Article IV, Section 3, Clause 2, commits to Congress the power "to dispose of and make all needful Rules and Regulations" respecting the lands of the United States. Utah Power & Light Company v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791. It is for the Congress to determine how the public lands shall be administered.

"The courts cannot compel it to set aside the lands for settlement, or to suffer them to be used for agricultural or grazing purposes, nor interfere when, in the exercise of its discretion, Congress establishes a forest reserve for what it decides to be national and public purposes." Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 488, 55 L.Ed. 570.

That power of Congress may be exercised through the vesting in the Secretary of Agriculture of the right to make the needed rules and regulations so as to effectuate the legislative policy. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563.

In making such rules and regulations, the right of the State to prescribe policies and regulations applicable to public land areas so long as the regulations are not arbitrary or inconsistent with applicable congressional enactments, is not limited or restricted. Bacon v. Walker, 204 U.S. 311, 27 S.Ct. 289, 51 L.Ed. 499; Omaechevarria v. Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763; McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L. Ed. 301.

Among the regulations to which State power extends are quarantine rules and measures to prevent breaches of the peace and unseemly clashes between persons privileged to go upon or use such areas. McKelvey v. United States, supra.

In the case of Denee v. Ankeny, 246 U.S. 208, 38 S.Ct. 226, 62 L.Ed. 669, the applicability of the Washington State Statute governing forcible entry and detainer as to premises on unappropriated public lands was recognized.

At the trial, plaintiff relied upon two cases: Light v. United States, supra, and Shannon v. United States, 9 Cir., 160 F. 870, 875.

The defendant attempts to distinguish the two cases on the ground that they both involved actual or intended trespasses upon the part of the owners of the cattle. While that is true and, strictly speaking, the two cases can only be of value in cases of similar import, nevertheless I am convinced from the language of the two opinions they compel the acceptance of the conclusion that the holdings would have been the same without the evidence as to intention of trespass. That is particularly true in the Shannon case where the Court said:

"It is clear that the state of Montana had no dominion over the public lands lying within its borders, and no power to enact legislation directly or indirectly affecting the same. It could not give to the people of that state the right to pasture cattle upon the public domain, or in any way to use the same. Its own laws in regard to fencing and pasturing cattle at large must be held to apply only to land subject to its own dominion. No one within the state can claim any right in the public land by virtue of such a statute. The United States have the unlimited right to control the occupation of the public lands, and no obligation to fence those lands, or to join with others in fencing them for the purpose of protecting its rights can be imposed on it by a state."

No more important problem confronts the West than the protection and rehabilitation of its range. It involves 728 million acres. Of that during the first thirty years of this century 76% declined appreciably in grazing capacity and only 16% improved. In 1936, we had six and a half million units of surplus stock on the western range. It is significant that during the thirty-year period prior to 1936 of the federally owned lands those under the control of the Forest Service had approximately 95% which were either unchanged or increased in grazing capacity while only 5% was on the down grade. This should be compared with 95% on the down grade of public lands in the public domain and grazing districts. It also should be compared with approximately 80% on the down grade of other federal lands; approximately 75% on the down grade of Indian lands. The state, county and private lands show a down grade in

excess of 80%. In the light of those facts it seems clear that the owners of cattle on any western range should be glad to co-operate with the Department of Agriculture in the preservation and rehabilitation of forest lands for range purposes.

This case does not involve attempting exercise of exclusive jurisdiction by the Federal Government. It is simply an attempt by that Government to protect, for the benefit of all its citizens, the property which it holds in trust for them.

The injunction will be granted.