**R. B. FRASER; R. B. Fraser, Inc., a Corporation; R. B. Fraser, Jr.; Fraser Livestock Company, a Corporation; and Charles Fraser, Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15917.**

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1958.

Charles Fraser (hereinafter Fraser) bring this appeal.

Appellants both own and lease lands within the Crow Indian Reservation in Montana. Appellants also held [1] a grazing permit issued by the United States covering other lands within the Reservation. Appellants' land and the Indian lands are, in most part, unfenced. The United States brought this action, in nine counts,[2] seeking to recover for livestock trespassing on the Indian lands; for overstocking the lands included in the grazing permit; for fees owing under the permit; and to permanently enjoin the further trespassing or overstocking on the subject lands.

The jurisdiction of the District Court rested on 28 U.S.C. § 1345, and jurisdiction in this Court on 28 U.S.C. § 1291.

Fraser relies upon eight specifications of error. These specifications present the three issues dealt with below.

Kurth, Conner & Jones, C. W. Jones, Billings, Mont., for appellants.

Perry W. Morton, Asst. Atty. Gen., S. Billingsley Hill, Robert S. Griswold, Jr., Attorneys, Department of Justice, Washington, D. C., Krest Cyr, U. S. Atty., Butte, Mont., Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for appellee.

Before FEE and HAMLIN, Circuit Judges, and BOWEN, District Judge.

HAMLIN, Circuit Judge.

This action was instituted by the United States in the District Court for the District of Montana. From a judgment for the United States, appellants, R. B. Fraser; R. B. Fraser, Inc.; R. B. Fraser, Jr.; Fraser Livestock Company; and

## I.

Appellant first contends that the finding of his livestock on the subject lands does not constitute trespass, because there is no showing of willfulness.

Title 25 U.S.C. § 179 provides:

"§ 179. *Driving stock to feed on lands.* Every person who drives or otherwise conveys any stock of horses, mules, or cattle, to range and feed on any land belonging to any Indian or Indian tribe, without the consent of such tribe, is liable to a penalty of $1 for each animal of such stock. This section shall not apply to Creek lands."

Under his authority [3] to make rules and regulations for the operation and management of Indian lands, the Secre-

---

1. The grazing permit was cancelled by the United States through its Bureau of Indian Affairs, effective December 31, 1954.

2. The case came to trial on nine counts. The government later conceded lack of proof in one count of trespass, and the District Court held that the statutory period for bringing the action barred their recovery for another count of tres-

pass. Appellants do not appeal the judgment against them on the Ninth Count, involving regular fees due and unpaid under the grazing permit.

3. Title 25 U.S.C. § 466, provides:
"§ 466. Indian forestry units; rules and regulations. The Secretary of the Interior is directed to make rules and regulations for the operation and management of Indian forestry units on the

tary of the Interior has promulgated the following regulation: 25 C.F.R. § 71.21, providing in pertinent part,—

"*Trespass.* The owner of any livestock grazing in trespass on restricted Indian lands is liable to a penalty of $1 per head for such animal thereof, together with the reasonable value of the forage consumed and damages to property injured or destroyed. The following acts are prohibited:

"(a) The grazing upon or driving across * * *

"(b) *Allowing livestock not exempt from permit to drift and graze on restricted Indian lands without an approved permit.*" [Emphasis supplied.]

The District Court found there was evidence of acts of trespass on December 31, 1943, June 12, 1945, January 30, 1952, February 4, 1952, February 12, 1952, July 8, 1955, July 28, 1955, and December 17, 1955. Recovery under one count was held to be barred by the five-year limitation imposed by Title 28 U.S. C. § 2462. The evidence was held sufficient to support three counts of trespass.

Appellant contends that § 179 requires a willful trespass, and that the evidence does not support a finding of willfulness. The reason for this last, urges the appellant, is that all the government has proved is that appellants' livestock were, on several occasions, *found* on Indian lands.

If the government were required to prove the "willfulness" urged by appellant, the statute would be rendered ineffective against all but the most inexpert of its violators.

The willfulness that appellant imparts to § 179 finds support in neither the cases nor the realities of the situation.

An early opinion of the Attorney General recognized and discussed this problem. In 16 Op.Atty.Gen. 568 (1880), the words "drive or otherwise convey" in the predecessor statute of § 179 were construed to mean that—

" * * * if the circumstances show an intent or willingness that they should so trespass, the persons so driving or conveying would, in my judgment, be liable to the penalty if the cattle should be found upon lands subject to the interdict. The statute does not require that stock should be actually driven upon the lands, but *so as to range and feed* upon them." [Emphasis in the original.]

The two cases relied upon by appellant to show willfulness do not support its contention.

In Shannon v. United States, 9 Cir., 1908, 160 F. 870, an injunction for livestock trespass on government lands was before this Court. Appellant contended that he had not driven his cattle onto the government reserve and that if they went onto the reserve, they went of their own accord. Thus, argued appellant, as the government land was unfenced, he was not accountable for the action of his livestock. The Court answered this by holding that Shannon knew of the nat-

---

principle of sustained-yield management, to restrict the number of livestock grazed on Indian range units to the estimated carrying capacity of such ranges, and to promulgate such other rules and regulations as may be necessary to protect the range from deterioration, to prevent soil erosion, to assure full utilization of the range, and like purposes. (June 18, 1934, c. 576, § 6, 48 Stat. 986.)"

25 C.F.R. § 71.1, provides:

"§ 71.1. General authority. It is within the authority of the Secretary of the Interior to protect Indian tribal lands against waste. Overgrazing which threatens destruction of the soil, is properly considered waste. Subject to regulations authorized by law, the right exists for Indian tribes and individual Indians to lease or grant permits upon their own tribal land or individual allotments."

25 C.F.R. § 71.3, provides, in part:

"§ 71.3. Objectives. It is the purpose of the regulations in this part to aid the Indians in the achievement of the following objectives:

"(a) The preservation through proper grazing practice of the forest, forage, land, and water resources on the Indian reservations, and the building up of these resources where they have deteriorated. * * * *"

ural proclivity of cattle to wander into the forest reserve, and thus Shannon was liable for not preventing his cattle from so wandering. The Court also held that the government was not required to fence its land.

In Light v. United States, 1911, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570, in defending against an action for livestock trespass on government lands, the appellant contended that he was not liable, because the government's land was unfenced, and that the Secretary of Agriculture could not "legislate" by making regulations as to the use, occupancy and preservation of forests. The Supreme Court there held that the Secretary's authorization to regulate was not unconstitutional as a delegation of legislative power, and that as the appellant turned out his cattle under circumstances showing that he expected and intended that they would go upon the government reservation to graze, appellant was thereby liable.

Again, in United States v. Thompson, D.C.Wash.1941, 41 F.Supp. 13, similar issues were raised. There, as here, the defendant relied on the Light (supra) and Shannon (supra) cases. The Court there said:

"There is no evidence of deliberate or intentional driving his stock onto the Government's land. Defendant just simply permits his stock to be loose and they graze upon his land, upon the lands of private owners and upon Government land."

The Court, in Thompson, then held that the Shannon and Light cases would have held as they did without the evidence as to intention to trespass. Injunctive relief was granted.

In the instant case, District Judge W. J. Jameson held that here the facts were not as strong as in Light or Shannon, but were stronger than in the Thompson case.

At page 149 of its well-reasoned opinion, 156 F.Supp. 144, the District Court said:

"The proof here indicates a 'careless disregard' of the consequences and a 'plain indifference' to the provisions of the statute. While there is no showing that defendants drove their cattle upon the plaintiff's land, defendants could reasonably anticipate that their livestock would drift onto plaintiff's land and subject them to the penalty prescribed by statute. The action does not involve an isloated act of trespass."

We agree. The record indicates that subsequent to the filing of the complaint, further acts of trespass occurred on March 21, 1956, March 29, 1956, April 9, 1956, November 20, 1956, December 12, 1956, January 17, 1957, and March 27, 1957. These findings, received into evidence relevant to the permanent injunction, further preclude appellant from contending that § 179 is being applied to punish him for "isloated", "unintentional" acts.

■ It is fundamental that one is liable for the natural and probable consequences of his own acts. Were there in fact only isloated incidents of Fraser's cattle being found on the Indian lands, a different question would be raised. However, here, the repeated nature of the offense clearly substantiates the District Court in its finding that there were willful trespasses within the meaning of § 179. We so hold.

■ In view of the above, it cannot be said that 25 C.F.R. 71.21 is unconstitutional as not being within statutory authority.

■ The Secretary of the Interior is expressly authorized "to promulgate such other rules and regulations as may be necessary to protect the range from deterioration, to prevent soil erosion, to assure full utilization of the ranges, and like purposes." (25 U.S.C. § 466, in footnote 3.) We readily appreciate the evidentiary problem in proving that cattle found on Indian lands are intentionally driven there by their owners. It is not unreasonable to find that where cattle are repeatedly found grazing on restricted Indian lands, § 179 is violated. The regulation here attacked, 25 C.F.R. 71.21,

**286**

is simply an authorization for that finding. As such, it is neither inconsistent with the underlying statute, nor arbitrary. Similar regulations have been consistently upheld by the courts. United States v. Grimaud, 1911, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; La Motte v. United States, 1920, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410. This is in keeping with the constitutional principle that Congress may establish a legislative scheme and delegate to executive officers, boards, or commissions the power to fill in the details and carry out the policy of that scheme.

The regulation prohibits "allowing livestock not exempt from permit to drift and graze on restricted Indian lands without an approved permit." To apply this regulation against one whose cattle are found but once or twice on restricted lands presents a question that this court is not called upon to answer. Fraser's cattle were repeatedly found on the subject lands, and as to him this regulation is not unconstitutionally applied.

### II.

The appellant next contends that the United States is not the proper party to bring these actions, because the trespasses were on lands of a non-Indian lessee, the Cormier Brothers, and that the lessee should have brought this action.

The District Court found that there was substantial evidence that overgrazing does in fact injure the land.

25 C.F.R. 71.1 provides in part:

" * * * It is within the authority of the Secretary of the Interior to protect Indian tribal lands against waste. Overgrazing, which threatens destruction of the soil, is properly considered waste."

In Finding of Fact XIII, the District Court found that overgrazing causes permanent damages to the inheritance of the land, but that such damages are difficult to determine and are not capable of exact computation. Expert testimony at the trial supports this finding.

■■ It is settled law that a landlord may bring an action to enjoin or to recover damages where injury is being done to his reversionary interest. Here, as trustee of the Indian lands, the United States may bring the action in place of the Indian lessor. United States v. Colvard, 4 Cir., 1937, 89 F.2d 312; Hall v. United States, 10 Cir., 1953, 201 F.2d 886.

### III.

Appellant's final contention is that the United States is not entitled to recover under the grazing permit, because it has not proved actual damages.

The grazing permit issued to Fraser authorized it to graze a limited number of cattle on Range Unit No. 19 (a range unit within the Indian lands). Evidence at the trial disclosed that appellant had grazed cattle in excess of the permitted number. Recovery was therefore granted by the lower court under the following clause of the Range Regulations Stipulation attached to the permit:

"Paragraph 3 * * * However, if the number authorized is exceeded without previous authority, the permittee will be required to pay in addition to the regular charges as provided in the permit, a penalty equal to 50 per cent thereof for such excess stock and the stock will be held until full settlement has been made."

Though the word "penalty" is used in the clause in question, the District Court held that this word was not determinative of the nature of the recovery, and that the provision for breach of this contract was one for liquidated damages. This finds support in United States v. Bethlehem Steel Co., 1907, 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731. The Court there held that what was referred to in the contract as a penalty was in fact liquidated damages. The Court in the Bethlehem case spoke of the one time reluctance of courts to support provisions for liquidated damages, but stated that now courts allow the intention of the parties to control.

In the instant case the provision was a reasonable forecast of just compensation for the harm caused by the breach

of the permit. The damage caused by overstocking the land is incapable, or certainly extremely difficult, of accurate estimation. The provision in the Range Regulations thus meets the test of liquidated damages as set forth by the Restatement of Contracts § 339.[4]

For cases discussing the distinction between liquidated damages and penalties, see Rex Trailer Co. v. United States, 1955, 350 U.S. 148, 76 S.Ct. 219, 100 L. Ed. 149; United States v. Weaver, 5 Cir., 1953, 207 F.2d 796, and Steffen v. United States, 6 Cir., 1954, 213 F.2d 266, 270.

In the Steffen case (supra) the Court there said:

"If the actual damage sustained would be wholly uncertain and incapable or very difficult of being ascertained, except by conjecture, the courts are inclined to look to the measure of damages fixed by the contract. But where the actual damage can be correctly ascertained by the application of a proper measure of damages to the actual facts, the courts are inclined to treat the provision as a penalty and leave the parties to their proof of actual damages suffered."

■ We hold that the District Court properly construed the Range Regulation to provide for liquidated damages. The additional charge of 50 per cent does not appear to be incommensurate with the estimated harm done by the overgrazing. Certainly such harm is difficult of accurate estimation, but it is oftentimes substantial.

The judgment of the District Court is hereby affirmed.

4. Restatement of the Law of Contracts:
"§ 339. Liquidated Damages and Penalties.
"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless
"(a) *the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and*
"(b) *the harm that is caused by the* breach is one that is incapable or very *difficult of accurate estimation.*
"(2) An undertaking in a penal bond to pay a sum of money as a penalty for nonperformance of the condition of the bond is enforceable only to the extent of the harm proved to have been suffered by reason of such nonperformance, and in no case for more than the amount named as a penalty, with interest." [Emphasis added.]