**UNITED STATES of America, Plaintiff,**

v.

**Carlos HOLMAN, Defendant.**

**No. S 65 C 3.**

United States District Court
E. D. Missouri,
Southeastern Division.

Oct. 14, 1965.

---

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for plaintiff.

James M. Reeves, Caruthersville, Mo., Richard D. Moore, West Plains, Mo., for defendant.

HARPER, Chief Judge.

This action was originally brought by the United States seeking damages and injunctive relief. At the close of the presentation of the evidence the plaintiff orally withdrew the claim for damages, leaving only the prayer for injunctive relief.

The United States maintains a national forest, known as the Mark Twain National Forest, in Shannon and Oregon Counties in the State of Missouri. The defendant owns a plot contiguous to the forest, and at the time in question had leased a ten-acre tract of land, also contiguous to the forest, from the United States for the cutting of hay. It was argued by the parties that the National Forest was open range, since parts of the two counties mentioned were open range under the Stock Option Laws of Missouri (Chapter 270 of RSMo 1959). This argument becomes moot in the light of the government's withdrawal of the land from the public domain by the creation of a National Forest, and hence the land was closed, regardless of the fact that the land was not fenced. Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L. Ed. 570.

The evidence discloses the following facts: From February 17, 1964, to the present, the forestry service employees working at the Mark Twain Forest have observed stray cattle roaming and foraging in the forest at certain points. These cattle have done some damage to the trees, grass, ponds and landscape. Pictures, which were introduced at the hearing of the case, were taken of some of the intruding cattle, and the cattle were followed when they left the area of the forest to attempt to determine their normal pasture. Evidence was presented in the form of testimony of certain employees of the forestry service regarding the conduct of the cattle while in the forest area, and their presence as noted elsewhere in the community.

Some of the government witnesses testified that they saw cattle, similar to the ones seen in the forest, on the land of the defendant. Identification was made by means of an unusual earmark, referred to as the "two-over-bit", and the naturally grown horns on a bull. The only witnesses who seemed positive in their identification of the animals were Glen Huddleston and Curtis Patterson. Huddleston made his identification on the basis of the markings on the cattle, which he had seen on the defendant's land for some time. Huddleston is an experienced rancher, owning a ranch of his own at one time. Patterson identified the cattle in the same way.

The other witnesses who identified the cattle did so by means of the earmark and the naturally grown horns, mentioned above. None of the witnesses who identified the cattle seen on the land of the defendant as those seen in the forest could say that the cattle were owned by the defendant. Robert Gardner saw some cattle running on the ten-acre plot leased by the defendant. The defendant admitted that the cattle seen running on this land, which was not supposed to be used for grazing, were his. However, the action of the government is to enjoin the defendant from allowing his cattle to run in the forest, and not to enjoin the defendant's misuse of the leased acreage.

All of the cases and authorities cited and examined supporting the plaintiff's

cause are based on the assumption that the person enjoined owned the cattle, or had sufficient control over them to become liable for their actions. Light v. United States, supra; Griffin v. United States, 8 Cir., 168 F.2d 457; United States v. Tygh Valley, Land & Livestock Co., C.C., 76 F. 693; United States v. Fraser, D.C., 156 F.Supp. 144; 4 Am. Jur.2nd Animals, Sec. 120; and 60 A.L.R. 2d 368, Sec. 18.

■ The accumulated weight of the plaintiff's evidence leads this court to find only the following fact: Some of the intruding cattle were seen on the land of the defendant. There was no evidence that the defendant owned the cattle seen on his land and in the forest. There was evidence of an unrepaired fence separating the defendant's land from the forest. This broken fence could have been the means for cattle getting from the defendant's land to the forest, or it could have been a means for stray cattle to wander from the forest onto the defendant's land. Until the government can show stronger evidence of ownership it is not entitled to the extraordinary remedy of an injunction.

By its own admission the government has a remedy. The stray cattle can be impounded under the provisions of 36 C.F.R. 261.13. While it is true that if the cattle were impounded the true owners could recover them upon the payment of a very minimal amount, but certainly when the cattle were claimed by the owners the ownership would definitely be established and an injunction sought on such basis would be proper, but the government has not carried the burden in this case with respect to the ownership of the cattle. The defendant denies the ownership, and the government's testimony is primarily speculative.

The government's prayer for injunctive relief is accordingly denied and the court will find in favor of the defendant.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the clerk will enter the proper judgment.