### UNITED STATES v. HOLLIDAY.
#### No. 3058.

District Court, D. Montana, Billings Division.

April 14, 1938.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., for defendant.

PRAY, District Judge.

A bill in equity was filed in the above cause on behalf of plaintiff to restrain the defendant from grazing sheep upon the lands of plaintiff, therein described, and to recover damages suffered thereby. An order to show cause and temporary restraining order was issued and a hearing had on the date therein named, whereupon evidence was submitted by the respective parties. The questions before the court at this time are presented by the order to show cause, temporary restraining order, motion to dismiss the bill, testimony of the witnesses and briefs submitted by counsel for both sides of the controversy.

"Appendix A", attached to the bill of complaint, contains a description of the lands involved herein, situated in Mussel-shell and Petroleum Counties, Montana, claimed by plaintiff as the absolute owner thereof and as being entitled to the possession and control thereof. It is alleged in the bill that from about the 10th of July 1937, up to and including the date of filing the complaint, the defendant "knowingly, willfully and unlawfully, and against the will, and without the consent, and in open defiance of the plaintiff, did drive, turn, and keep, and cause to be driven, turned and kept on and upon the lands and premises, hereinbefore described, a large quantity of livestock, to-wit: approximately six thousand head of sheep"; that the sheep were pastured upon said lands and destroyed the grasses and other feed and forage thereon, including Crested Wheat grass, put there by the Resettlement Administration to restore the range, prevent erosion, and carry out the purpose of flood control in Mussel-shell and Petroleum counties. The proof shows that the government officers, who testified in the case, had requested defendant and his employees not to graze over these lands but to cooperate with them in carrying on the work of the government for the purposes above mentioned.

The defendant claimed the right to use the resettlement lands the same as other public lands and appeared to be continuing to do so up to the time of filing the bill of complaint. There seems to be no doubt that the sheep were grazed upon the lands as alleged in the complaint. In defense defendant says the lands were used in crossing by way of necessity to reach other lands under lease, or otherwise occupied, by defendant; that the government had depleted his water supply and that he was obliged to go there for water. The excuses offered for the presence of the sheep on the lands in question appear to be insufficient in view of all the evidence submitted. The only question presented by the evidence seems to be, whether the defendant has the right to graze his sheep upon the lands now being used by the Resettlement Administration (now called Farm Security Administration), in accordance with the government's plans as above set forth.

It appears that the government acquired title to these lands by purchase under act of Congress of April 8th, 1935, 49 Stat. 115, the Emergency Relief appropriation, and, that the lands are being administered as authorized by Executive order Number 7027. The evidence shows that these lands were not withdrawn from the outstanding public lands of the government, but were such as had been held in private ownership and were repurchased by the government with the moneys thus appropriated and held for the uses above stated. The question of legislative consent to such purchases by the government has been raised; such consent by way of grant or cession by the state is given, where the government desires to acquire exclusive jurisdiction as in the case of Glacier National Park and Yellowstone National Park but would not apply in the present case. Here the Government con-

tends that it has the same right as any ordinary owner against a trespasser upon its lands. U. S. v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121.

The defendant relies upon the doctrine of implied license to graze domestic livestock upon these lands under authority of Buford v. Houtz, 133 U.S. 320, 10 S.Ct. 305, 33 L.Ed. 618. The facts in that case were different and did not involve a contest between the government and an individual. Subsequent authorities have unquestionably modified the doctrine of implied license, holding that possession thus permitted is by no means irrevocable, and that failure to object did not confer any vested right nor deprive the government of the power to recall any implied license under which the land had been used by private individuals. Stearns v. U. S., 8 Cir., 152 F. 900; Light v. U. ·S., 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570; U. S. v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563.

It was held in U. S. v. Tygh Valley Land & Live-Stock Co., C.C., 76 F. 693, 694; "It is in furtherance of the policy of the government by which the public domain is held for settlement that it shall be free to such use by the people as serves the convenience of settlers on uninclosed portions of it without public detriment. The reservation of the lands in question is an appropriation to a special public use, and is therefore a disposal of them, so far as the public domain is concerned. This appropriation is for the promotion of the public good." It was further held in that case that it would present a strange anomaly if the government, having power to make contracts and hold property as other persons, natural or artificial, were not entitled to the same remedies for their protection.

It follows therefore that the government would have a right to protect its interests against trespass and injury. The evidence discloses a clear intention on the part of the government to revoke any tacit consent claimed by defendant or other persons to graze livestock on the lands in question. The acts of Congress and Executive orders pursuant thereto and the evidence submitted clearly show that these lands were to be used, for the separate specific purpose therein indicated, by the Resettlement Administration and were not to revert to the public domain. These lands are now under the administration of the Department of Agriculture for the limited purposes indicated by the Acts of Congress and Executive Orders. Emergency Act of 1935, infra; Executive Order of April 30th, 1935; Executive Order of Dec. 31st, 1936. From the statutes and authorities cited it appears that the terms public lands and public domain relate to those lands open to sale or disposition under the general land laws of the United States.

These lands are not now of that description, but are owned, possessed and controlled by the Government for a specific purpose authorized by law. Undoubtedly the government would have the right to seek injunctive relief from continuing trespass and injury to its lands just the same as a private owner might do under like circumstances. Light v. U. S., supra; Musselshell Cattle Co. v. Woolfolk et al., 34 Mont. 126, 85 P. 874; U. S. v. Homer A. Rhinehart, D.C.Colo., No. 11,006.[1]

Although the court believes that the government may restrain any trespass or injury inflicted as set forth in the bill, nevertheless, in view of the implied license to graze over uninclosed public lands that has existed for so many years and has been so well understood by settlers on the public lands of the west, and recognized by the government, it seems to the court that officials of the government in charge of various enterprises requiring the use of large areas of the public domain, uninclosed, and some of which are not necessary for their immediate occupancy for such specific purposes, should not arbitrarily deprive the occupants of leased lands, and other entries, owning livestock, from continuing to use the lands or some portions thereof, where it is apparent that no serious harm would result to the contemplated government project. In other words, the principles of the "good neighbor" doctrine advocated by the President might be appropriately applied in the case before us. Of course, where unreasonable demands are made and detriment to the project would inevitably occur then the strict letter of the law would have to be adhered to. As the court understands the case the facts will have to be found in favor of the plaintiff, as hereinbefore disclosed, and an injunction pendente lite is hereby granted according to the prayer of the complaint in the above entitled cause, subject to a way of necessity to reach lands under lease by defendant, to remain open and subject to supervision of plaintiff's representatives.

---

[1] No opinion for publication.