**Sam D. RAWSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14661.**

United States Court of Appeals Ninth Circuit.

Sept. 21, 1955.

Norman N. Griffith, Portland, Or., for appellant.

Perry W. Morton, Asst. Atty. Gen., Elizabeth Dudley, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Bert C. Boylan, Asst. U. S. Atty., Portland, Or., for appellee.

Before STEPHENS, HEALY, and POPE, Circuit Judges.

HEALY, Circuit Judge.

The controlling question in this case is whether land purchased by the United States for a specific purpose is open to location under the general mining laws. In its complaint in the action the government asked that appellant be enjoined from further occupancy of a mineral claim he had located on government-owned land and from removing volcanic cinders therefrom. Damages were asked on account of materials already extracted. The trial court granted the injunction prayed and awarded damages in a small amount.

The facts are undisputed. In 1915 the Department of the Interior issued to one Stoller a homestead patent to 160 acres of land located in Secs. 13 and 24, Twp. 11 South, Range 12 East of Willamette Meridian, in Oregon. This homesteaded area embraces within its limits the 20-acre mining claim in question, which latter was located by appel-

lant in 1951. In 1937, long prior to the location, the United States had purchased from the grantee of Stoller the 160-acre tract. The government's purchases apparently included also other privately owned lands in the same sections, in other sections of the Township, and in adjoining Townships. The purpose of the acquisitions was to retire submarginal lands from agricultural use, to prevent soil erosion, to protect watersheds, to conserve wildlife, and other allied purposes. The purchases were made with funds appropriated by the Emergency Relief Appropriations Act of 1935, 49 Stat. 115. In 1938 these acquired lands were by executive order [1] designated for administration by the Secretary of Agriculture under the Bankhead-Jones Farm Tenant Act of July 22, 1937, 50 Stat. 522, 525, as amended by the Act of July 28, 1942, 56 Stat. 725, 7 U.S.C.A. § 1000 et seq. In 1940 the Department of Agriculture and the Oregon State Highway Commission entered into a fifty-year licensing agreement wherein the Commission was authorized to remove stone, gravel and other materials from the area for use in construction upon or in connection with the property. Following all this, appellant made his placer mining location and proceeded to remove materials therefrom.

Appellant predicates his claim of right to make the mineral location in part upon verbiage of Title 30 U.S.C.A. § 22, enacted in 1872, authorizing mineral entries on "lands belonging to the United States". Prior to this enactment mineral lands were subject to disposition under the Act of July 26, 1866, 14 Stat. 251, which relates to "the mineral lands of the public domain". The legislative history of the 1872 Act affords no grounds for believing that the variance in verbiage from the earlier statute has any present significance. The contrary, indeed, appears to be the case. Representative Sargent who fathered the 1872 bill and was in charge of it in the House said that "the bill does not make any important changes in the mining laws as they

---

[1] Executive Order 7908, June 9, 1938, 3 F.R. 1389.

have heretofore existed. It does not change in the slightest degree the policy of the Government in the disposition of the mining lands." Cong. Globe, 42nd Congress, 2d Sess., p. 534.

However this may be, debate on the point would appear to be foreclosed by the holding of the Supreme Court in State of Oklahoma v. State of Texas, 1922, 258 U.S. 574, 599–600, 42 S.Ct. 406, 416, 66 L.Ed. 771, where the Court, after quoting the relevant provision of the 1872 Act, said: "This section is not as comprehensive as its words separately considered suggest. It is part of a chapter relating to mineral lands which in turn is part of a title dealing with the survey and disposal of 'The Public Lands.' To be rightly understood it must be read with due regard for the entire statute of which it is but a part, and when this is done it is apparent that, while embracing only lands owned by the United States, it does not embrace all that are so owned. Of course, it has no application to the grounds about the Capitol in Washington or to the lands in the National Cemetery at Arlington, no matter what their mineral value; and yet both belong to the United States. And so of the lands in the Yosemite National Park, the Yellowstone National Park, and the military reservations throughout the Western States. Only where the United States has indicated that the lands are held for disposal under the land laws does the section apply; and it never applies where the United States directs that the disposal be only under other laws."

It is argued that Executive Order No. 7672 issued in July of 1937 (shortly after the government's acquisition of the Stoller land) by its express terms provided that that land was to be subject to mineral entry. Order No. 7672 describes an area including a large part of Township 11, in which that land lies, as well as lands in other Townships in the same general locality. In reference to Sec. 13 of Township 11 it indicates a withdrawal of "all" lands in the section. Omitting the legal description of the parcels affected, the withdrawal order is quoted on the margin.[2]

 The essential thing to note is that in the caption and throughout the Order the withdrawal related solely to the "public lands." As stated in Section 1 thereof, it affects "any public lands"

---

2. "Executive Order
"Withdrawal of Public Lands for the Use of the Department of Agriculture
"Oregon

"By virtue of and pursuant to the authority vested in me by the act of June 25, 1910, ch. 421, 36 Stat. 847, as amended by the act of August 24, 1912, ch. 369, 37 Stat. 497, it is ordered as follows:

"Section 1. Executive Order No. 6910 of November 26, 1934, as amended, temporarily withdrawing certain lands for classification and other purposes, is hereby revoked so far as it affects *any public lands* within the following-described area in Oregon:

* * *. [Legal Description.]

"Section 2. Subject to the conditions expressed in the above-mentioned acts and to all valid existing rights, *all vacant, unappropriated, and unreserved public lands within the above-described area* are hereby temporarily withdrawn from settlement, location, sale, or entry, and reserved and set apart for use and development by the Department of Agriculture for soil erosion control and other land utilization activities in connection with the Central Oregon Land Project, LA–OR 2: *Provided, that nothing herein contained shall restrict prospecting, locating, developing, mining, entering, leasing, or patenting the mineral resources of the lands under the applicable laws.*

"Section 3. This order shall be applicable to all land within the area described in Section 1 hereof upon the cancellation, termination, or release of prior entries, selections, rights, appropriations, or claims, or upon the revocation of prior withdrawals, unless expressly otherwise provided in the order of revocation.

"Section 4. The reservation made by Section 2 of this order shall remain in force until revoked by the President or by act of Congress. [Emphasis ours.]
"Franklin D. Roosevelt
"The White House
July 19, 1937"
"[No. 7672]"
"[F.R. Doc. 37–2273; Filed, July 20, 1937; 2:50 p.m.]"

within the described area. Section 2 withdraws "all vacant, unappropriated, and unreserved public lands within the above-described area." The proviso at the close of Section 2, permitting prospecting and the location and exploitation of mineral lands, obviously has reference only to the pursuit of those activities on such of the lands as were public lands. Under the land laws mineral entries may be made only on lands forming part of the public domain, that is, public lands of the United States subject to entry, sale, or other disposal pursuant to general law.[3] Cf. Newhall v. Sanger, 92 U.S. 761, 763, 23 L.Ed. 769; United States v. Holliday, D.C., 24 F.Supp. 112; and compare State of Oklahoma v. State of Texas, supra. The Stoller tract, purchased by the government for prescribed uses, does not fall within the category of public land. It may be stated as a universal proposition that patented lands reacquired by the United States are not by mere force of the reacquisition restored to the public domain. Absent legislation or authoritative directions to the contrary, they remain in the class of lands acquired for special uses, such as parks, national monuments, and the like —areas which it could not rationally be argued remain open to location and exploitation under the mineral laws. Certainly, an intent can not be imputed to the President to throw open to mineral entry acquired land in the area which would not be subject to such entry in the absence of the withdrawal order. Authority in the executive to do that would be absent even if the result were intended.

■ Traditionally the public lands of the United States have been administered by the Department of the Interior, whereas here, as already noted, the acquired land involved had been authoritatively transferred to the Department of Agriculture for administration by that agency. The placing of these lands under the jurisdiction of the latter Department in itself refutes any notion that such lands were subject to the general land or mining laws. By the Bankhead-Jones Act, supra, Sec. 32, Title III, the Secretary of Agriculture had been given broad powers with respect to the disposition of acquired lands. He could "sell, exchange, lease, or otherwise dispose of" them, but only to public authorities for public purposes. As already seen, the Secretary did in fact by license extend to the Oregon Highway Commission for a fifty-year period the right to remove materials such as volcanic cinders from the very deposit subsequently located upon by appellant. As one would expect, the licensing agreement with the Commission contained a precautionary clause relating back to the proviso in Section 2 of Executive Order No. 7672, already quoted and discussed. The cause reads:

"It is provided, however, insofar as the land subject to this agreement consists of public domain reserved for use in connection with the project by Executive Order No. 7672, dated July 19, 1937, that nothing in this agreement shall be construed to restrict the disposition of mineral resources contained in such lands under the public land laws of the United States."

■ By its express terms this provision of the licensing agreement has no relation to acquired lands, but only to lands forming part of the public domain.

The judgment is affirmed.

3. There are exceptions to this principle where the Congress, as in the Stock-Raising Homestead Act of 1916, 43 U.S.C.A. § 291 et seq., has expressly reserved the mineral rights, leaving the lands open to prospecting and mineral location despite the issuance of homestead patents. The Stoller homestead with which we have to do here was not acquired under that Act.