UNITED STATES of America, Plaintiff,

v.

R. B. FRASER, R. B. Fraser, Inc., a corporation, R. B. Fraser, Jr., Fraser Livestock Co., a corporation, and Charles Fraser, also known as Chas. Fraser, Defendants.

Civ. No. 1804.

United States District Court D. Montana, Billings Division.

Nov. 1, 1957.

Krest Cyr, U. S. Atty., Butte, Mont., and Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Kurth, Conner & Jones, Billings, Mont., for defendant.

JAMESON, District Judge.

This action contains nine counts. In the first five counts plaintiff seeks recovery of a statutory penalty for livestock trespassing upon Indian lands, and in the sixth count a permanent injunction prohibiting the grazing of livestock by defendants upon these lands. In the seventh and eighth counts plaintiff seeks recovery for overstocking lands included in a grazing permit issued by plaintiff to defendant R. B. Fraser, and in the ninth count a balance due under this permit for the year 1954.

### First Count

In its first count, plaintiff seeks recovery of a penalty of $1 per head, or a total of $2285, for the trespass of 2285 sheep, upon Indian Trust land of the Crow Indian Reservation on December 31, 1943. This cause of action is asserted under Title 25 U.S.C.A. § 179, which provides:

"§ 179. Driving stock to feed on lands. Every person who drives or otherwise conveys any stock of horses, mules, or cattle, to range and feed on any land belonging to any Indian or Indian tribe, without the consent of such tribe, is liable to a penalty of $1 for each animal of such stock. This section shall not apply to Creek lands (R.S. § 2117; Mar. 1, 1901, c. 676 [§ 37], 31 Stat. 871.)"

Supplementing the statute, the Department of the Interior adopted the following regulation:

"No. 71.21 Trespass. The owner of any livestock grazing in trespass on restricted Indian lands is liable to a penalty of $1 per head for each animal thereof together with the reasonable value of the forage consumed and damages to property injured or destroyed."

"The following acts are prohibited:

"(a) The grazing upon or driving across any restricted Indian lands of any livestock without an approved grazing or crossing permit, except such Indian livestock as may be exempt from permit.

"(b) Allowing livestock not exempt from permit to drift and graze on restricted Indian lands without an approved permit." 25 C.F.R. 1956 Supp. 71.21.

Defendants contend that the action is barred by Title 28 U.S.C.A. § 2462, which reads:

"§ 2462. Time for commencing proceedings. Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

Plaintiff argues that this proceeding is not an action for a penalty but one for the recovery of civil damages of a compensatory nature, and that the so-called penalty is in fact liquidated damages. In support of this contention, counsel rely primarily upon Rex Trailer Co. v. United States, 76 S.Ct. 219, 350 U.S. 148, 100 L.Ed. 149; Meeker v. Lehigh Valley Railroad Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644; and United States v. Weaver, 5 Cir., 1953, 207 F.2d 796. In my opinion all of these cases are distinguishable. They involved contractual relations in which the Government was a party. Rex Trailer Co. v. United States, [350 U.S. 148, 76 S.Ct. 221] for example, involved the purchase of goods from War Assets Administration. In concluding that the recovery was civil in nature, the court recognized that, "The Government has the right to make con-

tracts and hold and dispose of property, and \* \* \* may resort to the same remedies as a private person." It held that liquidated damages are "a well known remedy" and when reasonable are not to be regarded as penalties. The instant case, however, does not involve any lease or other contractual relation, insofar as the first count is concerned, but rather a trespass, without right, upon Indian land held in trust by the Government. The doctrine of liquidated damages accordingly is not applicable.

It may reasonably be inferred also from the regulations that the Department of Interior has construed the recovery of $1 per head as a penalty rather than compensatory damages, in view of the additional provision for recovery of "a reasonable value of the forage consumed and damages to property injured or destroyed." 25 C.F.R. 1956 Supp. 71.21, supra.

Counsel have not cited, nor have I found, any cases which have passed upon the question of whether Title 28 U.S.C. § 2462 is applicable to a cause of action asserted under Title 25 U.S.C.A. § 179. In a long line of cases, however, the courts have consistently treated recovery under Section 179 as a penalty. See for example United States v. Ash Sheep Co., 9 Cir., 1918, 250 F. 591, 592, affirmed 1920, 252 U.S. 159, 40 S.Ct. 241, 64 L.Ed. 507, where R.S. 2117 (25 U.S.C.A. § 179) was construed as a "penal statute"; Janus v. United States ex rel. Humphrey, 9 Cir., 1930, 38 F.2d 431, 438, where the court held that the penalty for trespassing under Section 179 may be recovered by either civil or criminal action; Connolly v. United States, 9 Cir., 1945, 149 F.2d 666; United States v. Loving, D.C. N.D.Tex.1888, 34 F. 715.

It is my conclusion that the recovery sought under the first count is a penalty, and that the cause of action asserted under this count is barred by the provisions of Title 28 U.S.C.A. § 2462, supra.

### Second, Third, Fourth and Fifth Counts

In the second, third, fourth and fifth counts, plaintiff seeks to recover the penalty prescribed by Title 25 U.S.C.A. § 179, supra, for livestock trespassing on Indian lands in violation of the statute and regulations of the Secretary of the Interior, issued pursuant to authority conferred by Title 5 U.S.C.A. § 22, and Title 25 U.S.C.A. § 466, and found in 25 C.F.R., 1956 Supp., Sec. 71.21, supra (First Count).

Plaintiff concedes a failure of proof with respect to the third count. Under the second count plaintiff proved a trespass of 82 head of cattle on February 13, 1952; under the fourth count, a trespass of 9 horses and 3 mules on July 8, 1955; and under the fifth count, a trespass of 11 head of cattle on July 28, 1955.

Defendants contend that the statute requires a willful or intentional trespass; that to the extent the regulations attempt to make the proof of trespass less onerous, they are unconstitutional; and that the evidence does not justify a finding of willful or intentional trespass. Plaintiff contends that the proof is sufficient to show that defendants allowed their cattle to drift and graze upon the Indian lands in violation of the statute and regulations, and that the continuing nature of the trespasses justifies a finding of willful trespass.

■■ It is well settled (1) that the United States can prohibit absolutely or fix terms on which its property may be used; (2) that Congress has the exclusive right to control and dispose of the public lands of the United States; and (3) that when that right has been exercised with reference to lands within the borders of a state, neither the state nor any of its agencies has any power to interfere. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570; Utah Power & Light Co. v. United States, 243 U.S. 389, 404, 37 S.Ct. 387, 61 L.Ed. 791; Griffin v. United States, 8 Cir., 168 F.2d 457.

■ The power of Congress to control public lands may be exercised through vesting in the Secretary of the Interior the right to make rules and regulations

necessary to effectuate the legislative policy. Regulations of the type here under consideration have long been held a valid exercise of delegated power. United States v. Grimaud, supra. In LaMotte v. United States, 254 U.S. 570, 41 S.Ct. 204, 206, 65 L.Ed. 410, the Supreme Court held valid regulations of the Secretary of the Interior relating to grazing leases by members of an Indian tribe, affirming an injunction against defendants where their failure to conform was "not accidental, but intentional and persistent." Regulations issued by the Secretary of the Interior were upheld also in United States v. Travis, D.C.W.D. Ky.1946, 66 F.Supp. 413, and United States v. Johnston, D.C.S.D.W.Va.1941, 38 F.Supp. 4. See also Fussell v. United States, 5 Cir., 1939, 100 F.2d 995.

■■ Defendants have the burden of showing that regulations are not clearly within the statutory authority. As was said in United States ex rel. Knauff v. Watkins, 2 Cir., 1949, 173 F.2d 599, 603, "Regulations having been duly adopted, the burden is on one who questions them to show their invalidity. Montana Eastern Limited v. United States, 9 Cir., 1938, 95 F.2d 897. And this burden can be carried only by showing as a minimum that the regulations are inconsistent with the underlying statute or are unreasonable or inappropriate. United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926; Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846." Defendants here have not shown that the regulations are unreasonable or inconsistent with the statute, and it is my conclusion that the regulations are valid.

It is true that in most cases involving trespass of livestock on Government land the court has found an element of intent or willfulness (or acts from which willfulness could be inferred) on the part of the owner of the livestock. In Light v. United States, supra, [220 U.S. 523, 31 S.Ct. 488] perhaps the leading case involving trespassing livestock on public domain, the court said:

"Even a private owner would be entitled to protection against wilful trespasses, and statutes providing that damage done by animals cannot be recovered, unless the land had been inclosed with a fence of the size and material required, do not give permission to the owner of cattle to use his neighbor's land as a pasture. They are intended to condone trespasses by straying cattle; they have no application to cases where they are driven upon unfenced land in order that they may feed there * * *

"Fence laws do not authorize wanton and wilful trespass, nor do they afford immunity to those who, in disregard of property rights, turn loose their cattle under circumstances showing that they were intended to graze upon the lands of another.

"This the defendant did, under circumstances equivalent to driving his cattle upon the forest reserve. * * *

"It appears that the defendant turned out his cattle under circumstances which showed that he expected and intended that they would go upon the reserve to graze thereon. Under the facts, the court properly granted an injunction." See also: Shannon v. United States, infra.

In United States v. Thompson, D.C. E.D.Wash.N.D.1941, 41 F.Supp. 13, the evidence disclosed that the defendant was "owner of a small number of cattle which have been and are straying on the United States national forest lands and grazing thereon." There was "no evidence of deliberate or intentional driving his stock onto the Government's land. Defendant just simply permits his stock to be loose and they graze upon his land, upon the lands of private owners and upon Government land. * * *" In granting an injunction, the court said:

"At the trial, plaintiff relied upon two cases: Light v. United States,

supra, and Shannon v. United States, 9 Cir., 160 F. 870, 875.

"The defendant attempts to distinguish the two cases on the ground that they both involved actual or intended trespasses upon the part of the owners of the cattle. While that is true, and strictly speaking, the two cases can only be of value in cases of similar import, nevertheless I am convinced from the language of the two opinions they compel the acceptance of the conclusion that the holdings would have been the same without the evidence as to intention of trespass. That is particularly true in the Shannon case   *   *   *."

The facts and circumstances surrounding the several trespasses in this case were not so strong as those in the Light and Shannon cases to establish a "willful trespass". On the other hand, the Government here made a stronger showing than in the Thompson case. Were the trespasses here in fact willful?

█ In a criminal action involving turpitude, "willful" is "generally used to mean with evil purpose, criminal intent or the like". In an action which does not involve turpitude, the word "is often used without any such implication   *   * it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and   *   *   * is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act.'" United States v. Illinois Central Railroad Co., 303 U.S. 239, 58 S.Ct. 533, 535, 82 L.Ed. 773, an action to recover a penalty for violation of a statute prescribing a limitation on period of continuous confinement for stock. The court continued: "*   *   * So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements."

█ The proof here indicates a "careless disregard" of the consequences and a "plain indifference" to the provisions of the statute. While there is no showing that defendants drove their cattle upon plaintiff's land, defendants could reasonably anticipate that their livestock would drift onto plaintiff's land and subject them to the penalty prescribed by statute. The action does not involve an isolated act of trespass. Rather there was evidence of acts of trespass on December 31, 1943, June 12, 1945, January 30, 1952, February 4, 1952, February 12, 1952, July 8, 1955, July 28, 1955 and December 17, 1955. It is my conclusion that the evidence was sufficient to establish willful trespasses under the second, fourth and fifth counts and that plaintiff is entitled to judgment for the respective amounts proved under those counts.

### Sixth Count

█ In the sixth count plaintiff seeks a permanent injunction. On November 30, 1956, Judge Charles N. Pray entered an order granting plaintiff's motion for a temporary injunction, in which defendants were enjoined from "driving and drifting, allowing to drift, herding or conveying any livestock on or upon, or permitting the same to be driven, drifted, allowed to drift, herded, or conveyed, or pastured, grazed, or fed on or upon any of the lands and premises within the exterior boundaries of the Crow Indian Reservation in the State of Montana, or any part thereof, during the pendency of this action, save upon any lands and premises lawfully within the possession of said defendants."

In granting the temporary injunction, Judge Pray considered the acts of trespass specified in the discussion of the second, fourth and fifth counts and in addition further acts of trespass on November 18th and November 20th, 1956. For the purpose of considering whether a permanent injunction should be granted, the court also received evidence at the trial of subsequent acts of trespass on March 21, 1956, March 29, 1956, April 9, 1956, December 12, 1956, January 17, 1957 and March 27, 1957. The continuing nature of the trespasses justifies a permanent injunction.

Defendants argue with respect to the first six counts that the action is in fact for the benefit of a white permittee of the lands in question, that no damage has been shown to the tribe or Indian allottees, and that accordingly the Government has no right to maintain the action. It is true that in part at least these counts involve a controversy between defendants and the white permittee. In addition, however, it is alleged in the sixth count that the trespasses and overgrazing cause irreparable damage and injury to the inheritance of the lands. While no specific damage was shown to the lands in question, there was substantial evidence that overgrazing does in fact injure the lands. The penalties are for the use and benefit of the Tribe and its members.

The departmental regulations provide that it is "within the authority of the Secretary of the Interior to protect Indian tribal lands against waste" and that "overgrazing, which threatens destruction of the soil is properly considered waste". 25 C.F.R. 1956 Supp. 71.1.

It is well settled that "the government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers". Camfield v. United States, 1897, 167 U.S. 518, 524, 17 S.Ct. 864, 866, 42 L.Ed. 260. The Government has the same rights with respect to lands held in trust for Indian tribes. United States v. West, 9 Cir., 1956, 232 F.2d 694; United States v. Gray, 8 Cir., 1912, 201 F. 291; and United States v. Fitzgerald, 8 Cir., 1912, 201 F. 295. "It is the right and the duty of the government to maintain such suits as may be necessary for the protection of its Indian wards. * * * And particularly is this true where the United States holds lands in trust for the use and benefit of these wards and suit is necessary for the protection of the lands," (citing cases). United States v. Colvard, 4 Cir., 1937, 89 F.2d 312, 313. See also: LaMotte v. United States, supra.

It is admitted that title to the lands in question is in "plaintiff in trust for the Crow Indian Tribe or certain members thereof" and that the lands are "managed and supervised by plaintiff" through the Bureau of Indian Affairs. In my opinion this action is properly maintained by the Government for the use and benefit of the Crow Indian Tribe and its members.

### Seventh and Eighth Counts

Under the seventh and eighth counts plaintiff seeks recovery of "penalties" for overstocking under a grazing permit issued by plaintiff to defendant R. B. Fraser. Plaintiff contends that the so-called "penalty" is rather liquidated damages. Defendant contends that it is in fact a penalty, and in the absence of proof of actual damages, there can be no recovery.

The grazing permit was issued pursuant to regulations prescribed by the Secretary of the Interior (25 C.F.R. 71) and accepted by the defendant-permittee, subject to its "conditions and the attached range control stipulations". Under this permit defendant was authorized to hold and graze 83 head of cattle on tribal land on the Crow Reservation within Range Unit No. 19, the permit providing that it was issued with the understanding that a total of 124 head would be grazed on the unit, the carrying capacity of the privately owned or leased land being 41 head of cattle. Permittee agreed to pay $16.778 per head for year long grazing on the Reservation land, or a total annual payment of $1392.61. The total number of cattle allowed on the unit was later modified to 123 head by reason of withdrawal of a 40-acre tract from the Reservation land, with the resulting reduction from 83 to 82 of the carrying capacity on the Reservation land.

This is a so-called on-and-off permit, for which provision is made as follows:

"On-and-off grazing permits will be granted to persons owning livestock which will graze on a range unit where only a part of such unit is Indian land. This permit will be granted for the total number of live-

stock to be grazed on the entire unit but the permittee will be required to pay grazing fees only for the estimated carrying capacity of the Indian lands involved."

25 C.F.R. 1956 Supp., 71.20.

The grazing permit contains the following provision:

"It is further understood and agreed that if the permittee allows a greater number of livestock than the total number herein stipulated to graze upon this range unit of which the Indian range is a part, during the period this permit is in effect, this on-and-off clause shall immediately become null and void and the stock in excess of the number upon which fees are paid to the Indians shall be considered as in a state of trespass and treated accordingly."

Range regulation stipulations attached to the permit include:

"3. Unless the number of livestock specified in the permit is reduced by the Commissioner of Indian Affairs, the permittee will not be allowed credit or rebate in case the full number is not grazed on the area. However, if the number authorized is exceeded without previous authority, the permittee will be required to pay in addition to the regular charges as provided in the permit, a penalty equal to 50 per cent thereof for such excess stock and the stock will be held until full settlement has been made.

"15. All permittees must avoid trespassing. In case of trespass the herder and packer may be excluded from the reservation. The owner is liable to prosecution for civil damages. * * * The following acts constitute trespass:

"(a) The grazing upon or the driving of any stock across the reservation without a written permit, or the grazing upon or the driving across any reservation in violation of the terms of a permit. * * *

"(e) Violation of any of the terms of the grazing permit or crossing permit."

Proceeding under Par. 3 of the Range Control Stipulations, the Government alleges in the seventh count an overstocking on or about May 24, 1954 of 182 head of cattle and 32 head of horses. Considering one horse as equal to one and one-half cow units results in an excess of 107 cow units. At one and one-half times the rate of $16.778 per head, the amount claimed is $2,693.19, less a set-off of $687.51 by reason of forfeiture of a bond. The eighth count alleges a similar overstocking on or about November 4, 1954 of 196 head of cattle and 17 head of horses, or an excess of 98 cow units, resulting in a claim of $2,466.66. Demand and refusal of the amounts claimed under these counts were alleged and proved.

The evidence sustains a finding that an excess of the number of cattle alleged in each count was on the range unit on the dates specified. With respect to the horses, the Government witnesses testified that they were unable to get close enough on either occasion to identify the brands. Defendant testified that it was possible two or three saddle horses belonging to him were on the unit on the respective dates, but that Indian horses ranged practically at will, and he was of the opinion that most, if not all, of the horses were wild Indian horses. The difficulty experienced by the Government employees in approaching the horses lends some support to that contention. In any event, it appears to me that the evidence is insufficient to support a finding that the horses belonged to defendant, except for two or three saddle horses admitted by defendant.

Defendant testified that the land within the range unit was used by him in the spring and fall as a gathering and roundup place for other cattle owned by him, and that at times in the summer there were considerably fewer cattle on the unit than were authorized by this

permit. This, however, can be no defense in view of the fact that the permit contained no provision for average stocking or carrying capacity (as in Kirby v. U. S., for and on behalf of Crow Tribe of Indians, 260 U.S. 423, 43 S.Ct. 144, 67 L.Ed. 329). In fact the Range Control Stipulations specifically provide that no credit or rebate will be allowed in case the full number is not grazed on the area. (Par. 3 supra). Nor was authority obtained as provided in the Range Control Stipulations for permission to drive livestock across the area, or for bedding or camping privileges (Par. 4). The permit itself did not authorize such use at the discretion of the permittee.

The Government contends that the provision for payment by permittee of regular charges plus 50 per cent for stock in excess of the number specified in the permit, is a provision for liquidated damages under the lease-contract entered into by the parties, and that since two distinct violations occurred the defendant R. B. Fraser is liable for both the May and November overstocking in the same year. Defendant contends that this provision must be construed as a penalty and that the plaintiff is limited to a recovery of proven actual damages. Defendant asserts further that even if the charges are construed as liquidated damages, in no event should he be charged with both violations occurring in the same year. Are the charges sought by the Government in these counts in the nature of liquidated damages or penalties, and if the former is the defendant liable under both counts?

There is a third alternative,—that under the on-and-off clause of the permit, supra, all excess cattle were "in a state of trespass" and to be "treated accordingly". The regulations issued by the Secretary of the Interior provide that "The owner of any livestock grazing in trespass on restricted Indian lands is liable to a penalty of $1.00 per head for each animal thereof together with the reasonable value of the forage consumed and damages to property injured or de-stroyed * * *". (25 C.F.R. 1956 Supp., 71.21).

Giving effect to all of the provisions in both the permit itself and the range control stipulations thereto attached, it is my opinion that the Government had an election to treat the overstocking as a trespass and exact the penalty prescribed by Sec. 71.21 for each act of trespass or recover the penalty provided by Par. 3 of the Range Control Stipulations for the excess number of cattle.

The distinction between liquidated damages and penalties is set forth in the Restatement of the Law of Contracts as follows:

"No. 339. Liquidated Damages and Penalties.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

"(2) An undertaking in a penal bond to pay a sum of money as a penalty for non-performance of the condition of the bond is enforceable only to the extent of the harm proved to have been suffered by reason of such non-performance, and in no case for more than the amount named as a penalty, with interest."

See also: Steffen v. United States, 6 Cir., 1954, 213 F.2d 266, 270, citing cases and this section of the Restatement. In view of the fact that overgrazing which threatens destruction of the soil is properly considered waste (25 C.F.R. 1956 Supp., No. 71.1), it cannot be said that an additional charge of 50 per cent for

grazing privileges of livestock exceeding the established carrying capacity of the range is an unreasonable forecast of just compensation to the Indians for the harm done, and unquestionably such harm in any particular case would be difficult of accurate estimation. The charge of 150 per cent appears to meet the requirements set forth in the Restatement.

The distinction between liquidated damages and penalties was also considered by the United States Supreme Court in the case of United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 455, 51 L.Ed. 731, where the court said:

"The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. · Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, * · * * even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. * * * The question always is, what did the parties intend by the language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out."

" * * * we think it appears from the contract and the correspondence that it was the intention of the parties that this amount should be regarded as liquidated damages, and not technically as a penalty. This view is also strengthened when we recognize the great difficulty of proving damage in a case like this, regard being had to all the circumstances heretofore referred to."

As to whether the use of the word "penalty" is determinative, the court said:

" * * * It is true that the word 'penalty' is used in some portions of the contract, * * * The word 'penalty' is used in the correspondence, even by the officers of the government, but we think it is evident that the word was not used in the contract nor in the correspondence as indicative of the technical and legal difference between penalty and liquidated damages."

See also: Rex Trailer Co. v. United States, supra; Meeker v. Lehigh Valley Railroad Co., supra; United States v. Weaver, supra (under first count).

It is my opinion that the penalty prescribed by Par. 3 of the Range Control Stipulations is in fact a provision for liquidated damages. The excess charge is a reasonable forecast of just compensation for the harm caused by the breach, and the harm is one that is incapable or very difficult of accurate estimation. I do not agree, however, with the Government's contention that it can recover more than once during a lease year. If the penalty is in fact liquidated damages, it must be based on the contract provision for year-round grazing, and it was not intended that the payment should be due each time overstocking was found to exist. Each overstocking might properly be considered an act of trespass under the on-and-off provision, in which event the Government would be limited to $1 per head for each separate trespass. If there could be more than one recovery under Par. 3 of the Stipulations, the amount would be an unreasonable "forecast of just compensation" and could not properly be considered liquidated damages.

The view of liquidated damages is supported by the Regulations issued by the Secretary of Interior on Bond Requirements, 25 C.F.R. 1956 Supp., No. 71.17 providing in part:

"(b) In lieu of furnishing a surety bond, a permittee may deposit at the time of the first payment of the grazing fees a sum equal to one-half of the annual grazing fees. This sum shall be held by the Area Director as a cash penal bond and may be applied to the grazing fees due for the last six months of the permit; Provided, That no breach of the permit has taken place. In all cases where a cash deposit is made in lieu of a surety bond, the permittee shall execute a proper power of attorney authorizing the Area Director to apply the cash deposit as liquidated damages in the event of any breach of the permit."

The amount which the Government has allowed as a set off in the seventh count is approximately one-half of the defendant's grazing fees for one year and must be presumed to have been deposited as a bond as provided above. It has been treated as forfeited by the Director to apply on the liquidated damages for the breach of the permit.

The situation with respect to these counts is completely different from that presented under the first count. In the first count there was no contractual relationship between the parties, and the defendant was a trespasser, without right, on restricted Indian lands. In the seventh and eighth counts, there was a breach of a contract between the parties, and a specific stipulation in the permits for the compensation to be paid for the breach. In the first count, it could reasonably be inferred from the Regulations that a true penalty was intended. In the seventh and eighth counts, it may reasonably be inferred from the bond provision of the Regulations that liquidated damages were intended.

The largest number of excess cattle at any time was 196 (eighth count). Defendant admitted that there were probably two or three of his saddle horses grazing on the unit. Three horses would be the equivalent of four and one-half cow units, making a total of 200½ cow units. Deducting the carrying capacity of 123 cows, leaves 77½ cow units in excess of the number permitted. 150 per cent of 77½ units or 116¼ units times the rate per head of $16.778 results in a total recovery of $1950.44. Deducting therefrom the sum of $687.51 under bond forfeiture, results in the sum of $1262.93, for which judgment should be entered for plaintiff under the seventh and eighth counts, together with interest at 6% per annum from May 25, 1954.

## Ninth Count

The permit involved in the seventh and eighth counts was terminated on December 31, 1954, by letter to defendant R. B. Fraser, dated November 26, 1954, in which plaintiff demanded the amounts claimed under the seventh and eighth counts, together with the sum of $114.64 as grazing fees for the period December 1 to December 31, 1954 (Ex. 12). The evidence shows that this sum was not paid. Plaintiff accordingly is entitled to judgment against defendant R. B. Fraser for the sum of $114.64 on the ninth count, together with interest at 6% per annum from December 31, 1954.

Plaintiff shall within ten days prepare and file draft of judgment in accordance with this opinion, and serve a copy upon defendants. Defendants shall have ten days thereafter within which to serve and file objections to the proposed judgment.