Wallace IRON et al., Plaintiffs,

v.

Gladys E. KNOWLES, Defendant.

Theodore BEAR CLOUD et al., Plaintiffs,

v.

SOAP CREEK CATTLE COMPANY, a corporation, Defendant.

Arthur R. GARRIGUS et al., Plaintiffs,

v.

RESERVATION RANCHERS & FARM-ERS COOPERATIVE ASSOCIATION, Inc., a corporation, Defendant.

Civ. Nos. 259, 263, 272.

United States District Court
D. Montana,
Billings Division.

Sept. 24, 1964.

Harlow Pease, c/o Jones & Olsen, Billings, Mont., for plaintiffs.

Bruce R. Toole, Lamey Crowley, Kilbourne, Haughey & Hanson, Billings, Mont., for defendants Knowles & Soap Creek.

J. F. Meglen, Billings, Mont., for defendant Reservation Ranchers.

EAST, District Judge.

In these three consolidated class actions,[1] all of the plaintiffs, actual and represented, are "competent" Crow Indians,[2] and seek to recover that portion of a liquidated-damage assessment which was refunded at the direction of Fred H. Massey, the Acting Commissioner of Indian Affairs, Bureau of Indian Affairs (Bureau) to the defendants in the actions, respectively. The Court has jurisdiction by reason of the federal question involved.[3]

The defendant (Knowles), in cause No. 259, is a permittee under the terms and conditions of a Range Grazing Permit issued by the Superintendent of the Crow Indian Agency, under the direction of the Bureau, dated August 16, 1955, covering Range Unit No. 31, to which is attached mutually-agreed-to Range Control Stipulations;

The defendant (Soap Creek), in cause No. 263, is a permittee under a like Range Grazing Permit and attached stipulations, dated August 12, 1955, covering Range Unit No. 29; and

The defendant (Co-op), in cause No. 272, is a permittee under a like Range Grazing Permit and attached stipulations, dated August 15, 1955, covering Range Unit No. 34.

To each of these Range Permits is attached a schedule of land areas called "on-and-off lands," which, together with "Indian Land," aggregated and constituted the Range Unit. The "on-and-off lands" were either privately owned by or under private lease to the permittee and within his absolute control. The "Indian lands" were lands held in trust by the United States and supervised by the Bureau for the use and benefit of noncompetent Crow Indians. The "on-and-off lands" were land areas and tracts

1. Rule 23(a) (3), F.R.Civ.P.

2. Act of Congress, June 4, 1920, 41 Stat. 751, as amended by Act of May 26, 1926, 44 Stat. 658, as amended by Act of March 3, 1927, 44 Stat. 1365, and as amended by the Act of March 15, 1948, 62 Stat. 80.

3. Title 28 U.S.C.A. § 1331(a).

allotted to and in turn leased by "competent" Crow Indians to the permittees, respectively, for grazing purposes.

Each of the Range Permits specified the total number of livestock to be grazed on any given unit, and the Range Control Stipulations attached thereto set out an agreed liquidated-damage formula to be applied and assessed in the event the Range Unit was overstocked.

After the decision of the Bureau, based upon an aerial count of livestock, the defendants Knowles and Soap Creek were assessed, respectively, $19,573.40 and $2,-710.04 as liquidated damages for overgrazing. These amounts were paid. Thereafter, upon the initiative of the Bureau, Knowles and Soap Creek were, respectively, refunded $14,627.10 and $1,642.29. The Bureau made these refunds avowedly because it erroneously included in the formula computation of the liquidated damages assessments the acreage or area of the "on-and-off lands" privately leased by the permittees from "competent" Crow Indians, respectively.

Defendant Co-op, in cause No. 272, following a cattle count by the Bureau, was notified to show cause why it should not be assessed liquidated damages in the amount of $6,122 for overstocking its Range Unit. At a hearing, Co-op was successful in its claim that the Bureau should allow its request to include additional acres and areas in its "on-and-off lands" schedule, thereby enlarging the allowable carrying capacity, and reduced the assessment of liquidated damages which were paid in the amount of $3,-706.56. Subsequently, the Bureau, under the same reasoning and formula utilized in fixing the Knowles and Soap Creek refunds, refunded to Co-op the sum of $2,939.30.

The plaintiffs respectively contend that:

1) The theory on which the rebates were made by the Bureau disregards the terms of the grazing contract and reaches an interpretation in conflict with Section 3 of the Range Control Stipulations to plaintiffs' land;

2) The liquidated damages assessed and collected from the defendants, respectively, by the Bureau, were trust funds held for the benefit of all restricted Indians, and particularly the plaintiffs whose lands were a part of the Range Unit, respectively;

  (a) by reason of the terms of the contracts, and

  (b) under the overriding trusteeship of the government by which it holds Indian trust lands;

3) Denial to plaintiffs of participation in the assessed liquidated-damage funds and the rebating of the amounts to the defendants, respectively, to which the plaintiffs were entitled, was collusive and improper because

  (a) plaintiffs were denied notice or hearing, and

  (b) the Bureau's decision to refund by-passed the office of the solicitor, in contravention of a secretarial order, and

4) The rebates to the defendants, respectively, were based upon the false assumption by the Bureau that the "on-and-off lands" under lease from the plaintiff "competent" Crow Indians were valid and enforceable.

The plaintiff in cause 272 makes the additional contention that:

5) The "stocking credit" awarded was illegal and unauthorized

  (a) for an unauthorized amendment to the schedules,

  (b) for unfair hearing by reason of lack of notice to the plaintiffs, and

  (c) the inclusion of "on-and-off lands" created an illegal overlapping of leases.

### PLAINTIFFS' CONTENTION 1

Stipulation No. 3 of the Range Control Stipulations contained in each of the permits provides:

"* * * However, if the number of livestock authorized is exceeded, the permittee shall be liable to pay as

liquidated damages, in addition to the regular fees for the full grazing season as provided in the permit, a sum equal to 50 per cent thereof for such excess livestock and such livestock shall be promptly removed from the unit."

25 C.F.R. 151.5 in part provides:

"The Commissioner of Indian Affairs shall prescribe for each reservation the maximum number of livestock which may be grazed on *Indian range lands* * * *" [Emphasis supplied.]

25 C.F.R. 151.10 is as follows:

"Authority to sell grazing privileges on tribal and allotted land. Grazing privileges may be sold on Indian land in range units in the following manner:

"(a) Authority to sell grazing privileges on tribal lands shall be granted pursuant to § 151.13.

"(b) Authority to sell grazing privileges on allotted land may be granted by the owners thereof, except those classes described in paragraphs (c) and (d) of this section on an approved form authorizing the superintendent to issue grazing permits at not less than the minimum fees stipulated in such instrument. * * *"

"(c)" deals with allotments of minors.

"(d)" deals with lands owned by Indian orphan minors and incompetents.

25 C.F.R. 151.20 defines "on-and-off lands" and distinguishes them from "Indian land," for the purposes of the grazing permits involved herein, viz:

"Sec. 151.20. *On-and-off grazing permits.* On-and-off grazing permits will be granted to persons owning livestock which will graze on a range unit *where only a part of such unit is Indian land.* This permit will be granted for the total number of livestock to be grazed on the entire unit but the permittee will be required to pay grazing fees only for the estimated carrying capacity of the Indian lands involved." [Italics supplied.]

The "Indian land" referred to in the above section is that land referred to previously as being held in trust by the government for the Indian, and is managed and controlled by the Bureau for the Indians' use and benefit. It is for the use of this Indian land that the licensee-rancher must pay the grazing fee. On the other hand, the on-and-off land is under the control and dominion of the licensee-rancher, either by his ownership or his leasehold interest from another. It is manifestly clear that this section does not contemplate that the permittee-rancher pay grazing fee or license for that land which he controls as owner or as a holder of a leasehold interest from others, including "competent" Crow Indians who manage and control their own allotted lands in pro. per. Accordingly, on-and-off lands must be excluded from the permits' provisions for the assessment and collection of liquidated damage for overstocking. Such was the rationale of the final decision of the Bureau, and I conclude it is sound and the plaintiffs cannot be granted relief under this contention. The plaintiffs rely heavily upon United States v. Fraser, 156 F.Supp. 144 (D.Mont.1957). This case dealt with paragraph 3 of the stipulations as it applied to lands *admittedly* held by the government "* * * in trust for the Crow Indian Tribe or certain members thereof." Judge Jameson held, at page 152 that the government could treat the overstocking as a trespass upon the lands (necessarily those held by it in trust) and recover the penalty provided by paragraph 3. There was no issue as to a recovery of the penalty on behalf of competent Crow Indians. The case is not germane to our problem. And for the same reason the language "* * * here, as Trustee of the Indian lands, the United States may bring the action (for waste or damage of lessor's reversionary interest) in place of the Indian lessor. * * *" appearing at p. 286 of 261 F.2d

(9th Cir.1958, affirming Fraser, supra), must be considered and treated as non-adjudicating dictum.

## PLAINTIFFS' CONTENTION 2

The resolve of this contention requires ascertainment of the extent (indeed, whether at all) of the government's "overriding trusteeship" over lands allotted to, owned and in turn leased by "competent" Crow Indians to ranchers, who in turn use such leased "competent" Crow Indian lands, together with "Indian lands" under the supervision and control of the Bureau, as a grazing Range Unit under and pursuant to the terms and conditions of a permit issued by the Bureau under C.F.R. 151.20, *supra.*

A study of the successive Crow "competent" Acts clearly indicates intent on the part of Congress to gradually emancipate the Crow Indian so that he might manage his own affairs without governmental control and intervention.

The Act of June 4, 1920 (41 Stat. 751) allotted certain lands to the members of the Crow Tribe in trust patents. The Act of May 26, 1926 (44 Stat. 658) permitted competent allottees to lease their allotments for farming and grazing purposes, with the approval of the superintendent and for a period not to exceed five years. And, finally, the Act of March 15, 1948 (62 Stat. 80), entitled "An Act to give to members of the Crow Tribe the power to manage and assume charge of their restricted lands, for their own use or for lease purposes, while such lands remain under trust patents," reads in part as follows:

" * * * any Crow Indian classified as competent may lease his or her trust lands or any part thereof and the trust lands of their minor children for farming and grazing purposes: *'Provided further, That any Crow Indian classified as competent may lease his or her trust lands or any part thereof and the trust lands of their minor children for farming and grazing purposes: Provided, That any Crow Indian classified as competent shall have the full responsibility of obtaining compliance with the terms of any lease made: * * *.'*"

It now becomes indisputably clear that the "competent" Crow Indian may lease his own and his minor children's allotted trust lands (so far as we are here concerned for grazing purposes), free of control and supervision by the Bureau. Congress did, however, make the protective provision in 62 Stat. 80, *supra,* that no such lease shall be made for a period of longer than five years.

From all of this, I conclude that the Bureau was without authority to utilize Stipulation 3 as a measure or guide in determining, first, whether trespass or a waste was committed by the defendants, respectively, upon the "on-and-off lands" owned by the "competent" Crow Indians, respectively, and, secondly, the amount to be assessed as liquidated damage for such trespass or waste, as the case may be. Therefore, since the Bureau had no authority to act for and on behalf of the "competent" Crow Indian lessors under Stipulation 3 of the Range Control Stipulation, the Bureau's assessment and collection of the same thereunder was unlawful and wrongful, and the Bureau held the collected funds, not as trustee for the plaintiffs, but money had and received and returned to the defendants so wrongfully assessed, respectively. The plaintiffs are entitled to no relief under contention 2.

## PLAINTIFFS' CONTENTIONS 3 AND 5

The plaintiffs point to no provision of law or regulation entitling them, either as "competent" Crow Indians or otherwise, to notice or hearing in connection with a Bureau's assessment, collection, and distribution of liquidated damages had under Stipulation 3.

Since the plaintiffs, as "competent" Crow Indian lessors, have no standing under Stipulation 3, they have no cause for complaint for a lack of notice or hearing during the ascertainment and collection of the unlawful assessment for liquidated damages, and, hence, no prop-

erty interests of the "competent" Crow Indians, as independent lessors, has been adversely affected by or through a lack of due process at the hands of the Bureau. I find from the evidence that the personnel of the Bureau, in making the decision of refunds, did not bypass the office of the solicitor in contravention of any secretarial order; and, furthermore, I find that the decision on the part of the Bureau to refund was not in any way initiated or solicited by any of the defendants, and in fact arose and was carried out as an internal function of the Bureau.

I conclude that each of these contentions is untenable and cannot afford any of the plaintiffs any relief herein.

## PLAINTIFFS' CONTENTION 4

Under the issues raised by these contentions, plaintiffs assert that their "competent" Crow Indian leases to the defendants, respectively, were invalid under the Congressional protective mantle of the Act of March 3, 1927 (44 Stat. 1365), providing that no "competent" Crow Indian lease of grazing lands then in force or thereafter made " * * * shall be renewed, or any of the lands embraced within the same be re-leased, prior to one year before the termination of such lease. * * * " The defendants urge not so in this case, because here the practice was to annually terminate the existing five-year lease one year *in futuro*, and then enter into another five-year lease as of that date, thus staying within the letter of the Congressional mantle. Literally, this may be so, but in spirit, purpose and fact, I would side with a Bureau decision in 69 ID 203:

> "Executory lease agreements with competent Crow Indians which purport to cancel existing leases between the same parties as of a date one year or eighteen months in the future and to take effect as five year leases at the future date violate [62 Stat. 80, supra] and are void."

Such a conclusion is consistent with the spirit of United States v. Noble, 237 U.S. 74, 84, 35 S.Ct. 532, 536, 59 L.Ed. 844 (1915):

> "From every point of view, we must conclude that a lease for ten years, made in 1905, subject to an existing lease for ten years, of the same property, which by its terms was to run until 1912, was unauthorized and void."

However, in these proceedings it is not necessary for me to reach a conclusion as to whether the "competent" Crow Indian leases to the defendants, respectively, were invalid, *"executory"* lease agreements. The fact is that the leases were executed and the defendants are liable for grazing fees, rental and waste, if any, either under the terms and provisions of the leases themselves (estoppel or execution by performance), or under the application of quantum meruit. It is to be noted that each of the "competent" Crow Indian leases involved herein contains this customary provision against waste:

> "Lessee agrees to farm and graze the said premises in good and husbandlike manner and to permit no waste upon the premises."

Nevertheless, the Bureau did not make a recovery for the "competent" Crow Indian plaintiffs under these antiwaste provisions or a quantum-meruit concept, but, on the contrary, the assessment against and collection from the defendants was for a liquidated damage under a contractual overstocking formula of the Stipulation 3, to which the plaintiffs and their lands were strangers. The plaintiffs were not obliged to accept any such liquidated sum in lieu of their own remedy either under the antiwaste provisions of their leases or damage or award under quantum meruit, nor can they complain of the Bureau's action in making a refund or return of the unlawful assessment under this contention.

I am satisfied that the plaintiffs are entitled to no relief under the present pretrial contentions, and their cause against the defendants, respectively, upon

such issues, should be dismissed. However, I am also satisfied that in the interest of securing a final adjudication on all permissible issues arising from the transaction in its entirety, the plaintiffs should be granted leave to submit, within ninety (90) days, further pretrial order contentions, if any they have, for a recovery from the defendants, respectively, for waste, upon either, or in the alternative, the antiwaste provisions of the lease or quantum-meruit theory, aided by such equitable estoppels and toll of limitations as may be available, or otherwise.

This memorandum decision, supplemented by the agreed facts contained in the pretrial order, shall stand as the Court's findings of fact and conclusions of law upon the present pretrial order contentions of the parties and issues thereunder, and the Court retains jurisdiction of the cause for further proceedings agreeable hereto, or order.

It is so ordered.