UNITED STATES of America ex rel. Alice WHITEHORSE and Billy Tsosie, Plaintiffs-Appellants, Cross-Appellees,

v.

Nancy Willcoxson BRIGGS, Defendant-Appellee, Cross-Appellant.

Nos. 76–1639, 76–1640.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 16, 1977.

Decided May 18, 1977.

284

Michael Celestre (Peter R. Taft, Asst. Atty. Gen., and Raymond N. Zagone and Charles E. Biblowit, Dept. of Justice, Washington, D. C., on the brief), for plaintiffs-appellants, cross-appellees.

Mary C. Walters, Albuquerque, N. M. (Marchiondo & Berry, P. A., Albuquerque, N. M., on the brief), for defendant-appellee, cross-appellant.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a *qui tam* action brought by Alice Whitehorse and Billy Tsosie, members of the Navajo Tribe, against Nancy Willcoxson Briggs for permitting her cattle to trespass upon certain Indian allotments. Jurisdiction was based on 28 U.S.C. §§ 1331 and 1345. Upon trial of the matter the trial court granted injunctive relief to the plaintiffs and also entered a money judgment in their favor against the defendant Briggs in the sum of $11,691. Pursuant to 25 U.S.C. §. 201, one-half of the sum so awarded was for the use and benefit of the United States, and the remaining half was awarded directly to Whitehorse and Tsosie. Each party, i. e., the plaintiffs and the defendant, was ordered to bear his or her own costs, with one-half of the plaintiffs' costs, i. e., $1,040, to be deducted from the amount awarded the United States and added to the amount awarded Whitehorse and Tsosie. Both sides appeal from the judgment thus entered.

As of 1970 Nancy Willcoxson Briggs, and her then husband, Garland Willcoxson, owned ranch properties near Whitehorse Lake, New Mexico. One of these ranch properties is known as the Whitehorse Ranch and some time ago a fence had been built completely around the Whitehorse Ranch. Enclosed within this fence were all or part of six Indian allotments checkerboarded among the land owned by the Willcoxsons. Whitehorse and Tsosie each owned one such Indian allotment, and each, through inheritance, had an interest in one other Indian allotment enclosed within the Whitehorse Ranch. The other two allotments were owned by persons not party to the present proceeding.

Garland Willcoxson died in 1972, and his widow, Nancy Willcoxson, the defendant in the present proceeding, has since remarried, but she will hereinafter be referred to as simply Nancy Willcoxson, or as the defendant. From 1970 till 1972 cattle owned by Garland and Nancy Willcoxson grazed on the Whitehorse Ranch and from 1972 till 1975, when the present action was commenced, cattle belonging to Nancy Willcoxson were allowed to graze on the Whitehorse Ranch. Within the confines of the fence around the Whitehorse Ranch the cattle were allowed to roam and graze indiscriminately, and the gist of the complaint is that by thus permitting the cattle to roam, the cattle from time to time trespassed on the Indian allotment land checkerboarded within the Whitehorse Ranch. Although it is no defense, the excuse offered by Nancy Willcoxson at trial was that she believed that she had a right to graze her cattle on the Indian allotments located within the Whitehorse Ranch, and in exchange therefor, the allottees, or other Indians, had been permitted to make use of certain land belonging to the Willcoxsons and situate outside the Whitehorse Ranch. She conceded, however, that she had no lease on the Indian allotments within the Whitehorse Ranch, let alone a lease which had been approved by the United States.

As indicated, this is a *qui tam* proceeding in which Whitehorse and Tsosie, proceeding as informers, seek to recover in the manner permitted by statute. In this regard, 25 U.S.C. § 201 provides as follows:

§ 201. *Penalties; how recovered*

All penalties which shall accrue under this title shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States, before any court having jurisdiction of the same, in any State or Territory in which the defendant shall be arrested or found, the one half to the use of the informer and the other half to the use of the United States, except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use.

The particular statute upon which plaintiffs' claim is based is 25 U.S.C. § 179, which reads as follows:

§ 179. *Driving stock to feed on lands*

Every person who drives or otherwise conveys any stock of horses, mules, or cattle to range and feed on any land belonging to any Indian or Indian tribe, without the consent of such tribe, is liable to a penalty of $1 for each animal of such

stock. This section shall not apply to Creek lands.

## WILLCOXSON APPEAL

### I.

■ Defendant Willcoxson initially contends that the provisions of 25 U.S.C. § 179 have no application where the Indian allottee is not in either occupation or control of his allotment lands. The Indian allotments enclosed within the fence around the Whitehorse Ranch were neither occupied nor controlled by any of the allottees and therefore, according to Willcoxson, Whitehorse and Tsosie cannot avail themselves of § 179. We do not agree.

In support of the proposition that Whitehorse and Tsosie do not come within the statute, counsel relies on dictum in *United States v. Ash Sheep Co.*, 229 F. 479 (D.Mont.1916). In our view this dictum has been effectively repudiated by subsequent cases involving the same Ash Sheep Co. In the *Ash Sheep Co.* case relied on by Willcoxson, the district court granted the United States an injunction and enjoined the defendant sheep company from grazing its sheep on Indian lands. At the same time the district court refused to award the United States the statutory penalty provided for in the statutory predecessor to § 179. The district court gave several reasons for refusing to award the United States the statutory penalties provided by the statute, one of which was that the statute in question only contemplated "lands so far in Indian occupancy and control that grazing will be an injury to the Indians. . . ." the district court then going on to note that "[t]he lands [here] involved are otherwise." Another reason given by the district court in declining to award the United States the statutory penalty was that "sheep" were not "cattle," and hence the statute did not apply to sheep grazing on Indian land. A third reason given by the district court was that the case then pending before it was one in equity, and that a court in equity had no jurisdiction to award a statutory penalty.

On appeal by Ash Sheep Co. the grant of injunctive relief was affirmed. No appeal was taken from the further ruling of the district court that in a suit in equity the court lacked jurisdiction to collect statutory penalties. *Ash Sheep Co. v. United States*, 250 F. 591 (9th Cir. 1918).

It was in this setting that the United States instituted a new proceeding, in law, to recover the statutory penalty from the Ash Sheep Co. This time recovery was denied by the district court on the ground that the statute did not apply to sheep. On appeal the circuit court reversed, holding that "sheep" were "cattle" within the meaning of the statute. *United States v. Ash Sheep Co.*, 250 F. 592 (9th Cir. 1918). On remand the district court entered judgment in favor of the United States and against the sheep company in the sum of $5,000. On appeal this judgment was affirmed. *United States v. Ash Sheep Co.*, 254 F. 59 (9th Cir. 1918). And on appeal to the United States Supreme Court the Ninth Circuit was affirmed. See *Ash Sheep Company v. United States*, 252 U.S. 159, 40 S.Ct. 241, 64 L.Ed. 507 (1920). So, it would appear that ultimately a money judgment based on the penalty provided for by statute was entered in a case where the Indian land trespassed upon was not under Indian control or occupancy. Hence, the *Ash* cases, when considered in sequence, actually indicate that occupancy or control is not a prerequisite to a recovery under § 179.

In any event, the dictum in the *Ash Sheep Co.* case in 229 F. 479 (D.Mont.1916) is little or no authority for the position taken here by counsel, namely, that since the allotment lands situate within the Whitehorse Ranch were not under Indian control or occupancy, Whitehorse and Tsosie could not avail themselves of the provisions of § 179. The statute itself contains no such limiting language, and we are disinclined to engraft such a restriction onto the statute.

### II.

■ Willcoxson next contends that there is no evidence that any of her cattle ever grazed on any allotment lands within the

confines of the Whitehorse Ranch. In this regard the trial court found that "evidence of the grazing of [Willcoxson's] cattle on the allotments is conclusive." We believe the trial court's finding is supported by the record. Although it is true that no witness testified that on a date certain he saw a particular animal belonging to Willcoxson trespassing on the Indian allotment land, that is not the only way a trespass could be established. Willcoxson was called as a plaintiff's witness and she testified as to the number of cattle that were placed on the Whitehorse Ranch, and the dates when the Whitehorse Ranch was in use. As mentioned, the cattle were allowed to roam within the ranch, though on occasion they would be driven from one part of the ranch to another. In our view the facts and circumstances are such as to amply permit the inference that Willcoxson's cattle did trespass on the Indian land within the ranch boundaries. To conclude that the Willcoxson cattle in their grazing activities studiously avoided the allotment land is contrary to the nature of such bovine critters. We agree with the trial court that the evidence of trespasses was "conclusive." It could hardly be otherwise. The extent of the trespasses is another matter which will be considered momentarily, but that trespasses did occur is in our view not really debatable.

### III.

As indicated, the trial court entered a money judgment in favor of the plaintiffs and against Willcoxson in the sum of $11,691. 25 C.F.R. § 151.24 provides as follows:

The owner of any livestock grazing in trespass in restricted or trust Indian lands is liable to a penalty of $1 per head for each animal thereof for each day of trespass, together with the reasonable value of the forage consumed and damages to property injured or destroyed.

. . . .

The trial court held that Nancy Willcoxson was not responsible for the trespassing cattle when her late husband, Garland Willcoxson, was alive and in charge of the ranching operations, and that she could only be held responsible for the trespasses occurring after his death on June 3, 1972, at which time she did take over the control of the ranching operation. The trial court then found that since June 3, 1972, there were 11,691 "head days" in which Willcoxson's cattle had trespassed on the Indian allotment lands, and, using the $1 per head per day figure contained in 25 C.F.R. § 151.-24, arrived at the figure of $11,691.[1] Willcoxson asserts that in thus assessing the penalties, the trial court engaged in sheer speculation and guesswork. We do not agree.

As indicated, we believe that the evidence clearly shows trespasses by the Willcoxson cattle on allotment lands. The extent of the trespasses is a more difficult matter. However, the general rule is that once an injury has been established, the fact that the extent of the injury cannot be established with absolute mathematical certainty is not grounds for refusing to allow any recovery. *Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd*, 503 F.2d 1193 (10th Cir. 1974) and *Southwestern Investment Co. v. Cactus Motor Co.*, 355 F.2d 674 (10th Cir. 1966).

In the instant case Willcoxson was called as a plaintiffs' witness and she testified as best she could, using records in some instances, as to the number of cattle that had been run on the Whitehorse Ranch. The plaintiffs also called a farm and ranch real estate consultant, one Gene Price, who had examined the Whitehorse Ranch and testified as to its grazing characteristics and the number of cattle it could support. The Whitehorse Ranch consisted of approximately 11 sections, with allotment lands comprising 1.35 sections. Using a ratio of the allotment land to the total Whitehorse Ranch acreage, Price expressed an opinion as to the number of cattle which could be

---

1. "Head-days" was the term used by the witness Price and the trial court to indicate the number of head of cattle multiplied by the number of days those cattle were on the allotment lands lying within the fence line of the Whitehorse Ranch.

supported by the allotment land, keeping in mind the figures, which were only partial and not exact, given by Willcoxson concerning the number of cattle she had run on the Whitehorse Ranch since the death of her husband. Relying on the testimony of both Price and Willcoxson, the trial court found that subsequent to June 3, 1972, the date of Garland Willcoxson's death, there had been 16,235 "head days," which the trial court then reduced to 11,691 "head days" to allow for "normal slack and other causes."

In arriving at the figure of 11,691 head days the trial court conceded that, while evidence of the grazing of Willcoxson cattle on the allotment was conclusive, the number of head and the days involved were not as accurate as might be desired, and had to be determined "as best as could be by the use of records and their summarization by a qualified expert." We agree with the trial court's analysis of the matter and are of the view that the evidence brought forward by the plaintiffs was about the best that could be obtained under the circumstances, and is sufficient to support the finding of the trial court.

## IV.

■ 25 U.S.C. § 179 provides any person driving stock to range and feed on Indian land is liable "to a penalty of $1 for each animal of such stock." 25 C.F.R. § 151.24 provides that there shall be a "penalty of $1 per head for each animal for each day of trespass." Willcoxson argues that the regulation promulgated by the Secretary is in conflict with the statute and that the latter should control. We fail to see that there is any real conflict between the statute and the Secretary's regulation and believe the regulation is a valid exercise of the Secretary's authority. 5 U.S.C. § 301 and 25 U.S.C. §§ 1a and 2.

Counsel for Willcoxson argues that the penalty provided for by the statute is limited to $1 per head of trespassing cattle, regardless of the duration of the trespass, and that the regulation in this regard is in conflict with the statute when it purports to permit a penalty of $1 per head per day

of trespass. To give the statute the construction argued for here by counsel would completely defeat the intent of, and purpose behind, the statute, and would, for example, permit a cow to trespass and graze on Indian land for a day, a month, a year, or forever, upon the payment of a statutory penalty in the amount of $1. We do not believe the statute dictates such a result.

Actually, both the statute and the regulation are aimed at the *act* of trespassing onto Indian land. The intent behind both the statute and the regulation is that each trespass constitutes a separate violation. As was noted in *Fraser v. United States*, 261 F.2d 282 (9th Cir. 1958), cattle have a proclivity to wander, and the regulation in our view is an attempt to recognize that fact. In the instant case Willcoxson cattle trespassing onto Indian land did not thereafter remain stationary within the confines of such Indian lands, but, on the contrary, were constantly exiting and re-entering such land. The penalty prescribed by the regulation is indicative that the Secretary is aware of the tendency of cattle to drift, and the regulation itself constitutes a proper exercise of the Secretary's regulatory power.

## V.

■ In addition to awarding the plaintiffs the penalty allowed by the applicable statute and regulation, the trial court also enjoined Willcoxson from permitting the cattle to continue to graze on the allotments belonging to Whitehorse and Tsosie. Willcoxson asserts here that in order to comply with this injunction she will have to build a fence around the allotments in question, and asks that Whitehorse and Tsosie be required to share the expense of building such a fence. No pertinent authority is cited in support of this rather novel proposition that an injured party should pay a part of the expense which the wrongdoer will incur if he is to cease his wrongdoing. Whether the only way Willcoxson can comply with the trial court's injunction is by building a fence we do not know. We do

know, though, that the trial court did not err in declining to order the plaintiffs to pay, in whole or in part, for any fence that Willcoxson deems necessary in order to comply with such injunction.

### WHITEHORSE AND TSOSIE CROSS–APPEAL

#### I.

◼ The trial court in determining the penalty allowed by statute and regulation held that Willcoxson was liable to respond for the period of time commencing upon the death of her husband, Garland Willcoxson, which occurred on June 3, 1972. After that date Nancy Willcoxson was in control of the ranching operations on the Whitehorse Ranch. Prior to June 3, 1972, Garland Willcoxson ran the ranch. Plaintiffs complain by way of cross-appeal that the trial court erred in not allowing penalties for the period of time from 1970 till Garland's death on June 3, 1972. We do not agree.

It is agreed that from 1970 till June 3, 1972, Garland Willcoxson had complete authority insofar as the management of the ranch was concerned. The time within which the plaintiffs could have filed a claim against Garland's estate has apparently long expired. Such being the case, in their effort to hold Nancy Willcoxson liable for the years 1970–1972, Whitehorse and Tsosie assert that certain, though not necessarily all, of the cattle run by Garland Willcoxson on the Whitehorse Ranch from 1970–1972 were community property and that such fact makes Nancy Willcoxson responsible for the trespasses occurring in 1970–1972. Suffice it to say that in our view this is not the proper case to make any detailed analysis of the New Mexico law on community property, and we decline to do so. In arriving at the figure of $11,691 as the penalty provided for by the applicable statute and regulation, the trial court took a middle of the road approach and we believe that substantial justice has been done the parties.

#### II.

◼ The plaintiffs further allege as error the failure of the trial court to award them damages for the forage consumed by the Willcoxson cattle and for damage thus done their allotments. Although there was some testimony regarding the value of the forage consumed by the Willcoxson cattle, the trial court was under no obligation to accept such testimony, which in our view was at best sketchy and inconclusive. We find no error in this regard.

#### III.

◼ In their complaint and amended complaint the plaintiffs asked for an award of costs. The trial court in its formal judgment decreed that each side should pay his or her own costs, with Whitehorse and Tsosie sharing with the United States the costs incurred by the plaintiffs. On appeal the plaintiffs contend that their costs should have been taxed against the defendant. It is plaintiffs' position that an award of costs in the instant case was mandated by 28 U.S.C. § 1918(a). The record is unclear as to whether this statute was even brought to the attention of the trial court. In any event, in our view the matter of costs has not been fully considered. Accordingly, the judgment of the trial court only as it relates to costs is reversed and the cause remanded for further consideration as to costs and the allowance thereof. Otherwise, the judgment is affirmed.